Argued March 20, 1957, affirmed February 26, 1958

# UNITED STATES NATIONAL BANK OF PORT-
# LAND *v.* MEYER ET AL

### 321 P. 2d 1054

[ 1 ]

*Clifford S. Beckett* and *Grant Mumpower,* Oregon City, argued the cause for appellants. With them on the briefs was O. G. Larson, Portland.

*Paul R. Biggs,* Oregon City, argued the cause for respondent United States National Bank. With him on the brief was William Hammond, Oregon City.

Before LUSK, Presiding, and WARNER and KESTER, Justices.

KESTER, J.

This is a suit to rescind a deed on grounds of fraud allegedly perpetrated by the grantee-defendant, John Meyer, on the grantor-plaintiff, Edward O. Spulak. The property involved is described as tax lot 2, southeast ¼ of section 18, township 5 south, range 4 east, Willamette meridian, in Clackamas county, containing 158.5 acres, more or less. After the trial, and while this appeal was pending, plaintiff Spulak died, and the United States National Bank of Portland, executor under his will, has been substituted as plaintiff-respondent herein.

From a decree granting rescission, and also rescinding a subsequent deed from the defendant Meyer to the intervenors, Avison Lumber Company, the defendant Meyer appeals. A separate appeal has been filed by Phillip Suetter, who was made a defendant by the complaint in intervention, and against whom judgment was entered jointly with defendant Meyer for return of the consideration paid by the intervenors. The intervenors, Avison Lumber Company, have not appealed, nor have they appeared in response to the appeals of Meyer and Suetter.

## The Pleadings

The complaint which originated the suit was by Spulak against Meyer only. While it lacks the clarity which is desirable in charging fraud, it alleges in substance that on January 29, 1953, Meyer induced Spulak to sign a deed to the property by: (1) orally agreeing to pay plaintiff's asking price of $2,500,000, when he had no intention of paying any such sum; and (2) misrepresenting the contents of the document which plaintiff signed.

Defendant Meyer, after denying generally all the complaint, alleged affirmatively that on or about January 29, 1953, Spulak and Meyer entered into a written option, for a consideration of $100, whereby Meyer was granted an option to purchase the property on or before March 29, 1953, for a price of $35,000. He alleged that simultaneously with the option, plaintiff executed and delivered the deed in question. He then alleged that on or about February 11, 1953, "in pursuance of exercising his said option," Meyer tendered to plaintiff the full amount of $35,000, but that plaintiff refused to accept it and demanded instead that Meyer pay $500 per month, without interest, until the amount of $35,000 was fully paid; and that Meyer then paid $1,000, representing the installments for January and February, 1953.

Although neither the deed nor the option made any mention of mineral rights, Meyer contends that mineral rights were reserved, and he alleged a separate agreement as to minerals with which we need not be concerned at this time. Meyer alleged that during early March, 1953, he tendered the March installment of $500, but that plaintiff refused to accept it and notified Meyer that he would refuse to accept all future payments. (The complaint herein was filed February 23,

1953.) Meyer then alleged a tender into court of the balance of $34,000, and a willingness to perform, but it does not appear that the money was actually paid into court. He also alleged that subsequent to January 29, 1953, the exact date being unknown to Meyer, he gave plaintiff a promissory note to evidence the $34,000 balance due, which he asked to have cancelled, apparently on the basis of the purported tender.

Before answering, Meyer sought and obtained leave to bring in as new parties defendant, William Avison and Robert E. Avison, doing business as Avison Lumber Co., to whom Meyer stated he had conveyed the standing timber on the property on February 11, 1953. Before any further action was taken by Meyer to bring in the Avisons as parties, however, the Avisons themselves moved for permission to intervene, and, their motion being granted, they filed a complaint in intervention which added still another party, Phillip Suetter, as a defendant.

In the Avisons' complaint in intervention it was alleged that when Meyer received the conveyance from Spulak, Meyer and Suetter acquired the property together, and that Meyer held an undivided one-half interest for the use and benefit of Suetter. It was then alleged that Meyer, acting for himself and also on behalf of Suetter, sold the timber on the property to the Avisons for a total price of $60,000, of which $30,000 was paid on the execution of the deed, February 11, 1953, and the balance of $30,000 was to be paid within 45 days, and that the first payment of $30,000 was divided between Meyer and Suetter.

With their complaint in intervention, the Avisons tendered into court the balance of $30,000 alleged to be due on their purchase of the timber. They took no position as to whether the Spulak-Meyer deed was

valid, but they prayed that if it was upheld, their own timber deed should be declared to be valid, and in that event their deposit in court would be for the benefit of Meyer. In the alternative, they prayed that if the deed from Meyer to Spulak should be set aside, then the timber deed from Meyer to the Avisons should also be rescinded, and that they should then receive back the $30,000 paid into court as well as the first $30,000 paid to Meyer and Suetter. It was not alleged that the Avisons were bona fide purchasers of the timber, without notice of any infirmity in Meyer's title. The complaint in intervention showed affirmatively that the Avisons had not been let into possession nor been permitted to cut the timber. Subsequently the $30,000 paid into court by the Avisons was withdrawn, pursuant to a stipulation and order of the court, and a personal bond was substituted.

Phillip Suetter, who was made a defendant by the complaint in intervention, filed an answer in propria persona (apparently prepared by a lawyer in California) in which he denied substantially all the complaint in intervention, denied that Meyer had acted on his behalf, and disclaimed any interest in the money tendered into court by the Avisons. Suetter appeared personally at the trial, without a lawyer, but has since obtained an attorney to represent him on this appeal.

In his answer to the complaint in intervention, defendant Meyer denied that he was acting for Suetter or that Suetter acquired any interest in the property, but he alleged that on January 29, 1953, (the date of the option and deed from Spulak to Meyer) he gave to Suetter an option to purchase the timber on the property on or before February 30, [sic] 1953, for the sum of $47,000.00, which option was cancelled on February 11, 1953 (the date of the timber deed from

Meyer to the Avisons) upon the payment of $10,500 by Meyer to Suetter.

## The Evidence

Plaintiff, Edward O. Spulak, was 77 years old at the time of the transactions involved. He had home-steaded the land in 1906, received the original patent in 1912, and had lived on it continuously since that time. He was something of a recluse and lived alone, except for a flock of goats. His dwelling was a log and shake cabin with a dirt floor, he slept on rails, and his only means of cooking and heating was a makeshift fireplace. His eyesight and hearing were poor, and he could read only with the aid of an eight-power magnifying glass. He apparently had grandiose ideas about the value of the timber and minerals on his property, and over the years various people had tried to buy the timber, without success.

Defendants, John A. Meyer and Phillip Suetter, were in the business of buying and selling timber. They were described by the trial judge, in his findings which are incorporated into the decree, as follows:

> "The defendants are confidence men and that on or about the 29th day of January, 1953, met with the plaintiff, Edward A. [Sic] Spulak, for the express purpose of cheating and defrauding him in any way the circumstances might permit."

Shortly before January 29, 1953, defendant Meyer came out alone to see Spulak about the timber, but there were no real negotiations at that time. On January 29, Meyer and Suetter called on Spulak together. The evidence as to what occurred at that meeting is sharply contradictory, but at the end of it, defendants emerged with three documents signed by Spulak: (1) a receipt for $100; (2) an option granting Meyer the

right to purchase Spulak's property on or before March 29, 1953:

> "* * * by placing in escrow with a reliable title company the sum of $35,000.00 ($35,000.00) dollars, to be paid to the undersigned upon receipt of a purchaser's policy of title insurance showing good merchantable title together with good and sufficient assignment of all interest in and to the property herein described which the undersigned hereby agrees to furnish at the time this option is exercised."

and (3) a warranty deed conveying the property to Meyer.

Spulak's account of the meeting, while not entirely coherent, is substantially as follows: They wanted to buy the property; Spulak told them he wanted "twenty-five hundred thousand"; they said they had it; Spulak didn't think they understood so he repeated the amount; they said "Yes" and agreed to pay $10,000 a month until the amount of two and a half million was paid; Spulak told them he held the timber at $240,000, to which they did not reply; nothing was said about cutting the timber; Spulak was to remain in possession until the full amount was paid; they didn't give him any money at all; they asked him to sign some papers; he looked over the papers with his magnifying glass, and they appeared to be blank; he signed more than twice; the papers were not read to him and he was not told what they were; there was discussion of mining, and he supposed it was a mining contract he signed; Spulak knew that he was supposed to sign a deed that day; but he didn't know that he had signed a deed until later, when it was called to his attention after it had been recorded.

With respect to the meeting of January 29, Meyer

testified: That there was no mention of a price of $2,500,000 nor of payments at the rate of $10,000 a month; that Spulak asked about a half million for the place because of the minerals; that they agreed on a price of $35,000 with mineral rights reserved; that they were to have a separate agreement with respect to the minerals; that at first Spulak was supposed to get his money at the title insurance office, but Spulak did not like that arrangement; that Meyer then suggested, "We can make out a deed and submit it to the title office to be sure to see if you own the place or to see if there is anything against the place"; that in order to get the property description Spulak got out his original patent; that Meyer then typed the description on a printed deed form; that Spulak signed it with only the description on the deed and the rest incomplete; that Meyer offered to read the papers to him, but Spulak refused and appeared to be reading them himself.

After Meyer and Suetter left Spulak's place, they took the deed to a legal stenographer who filled in the remaining blanks. According to Meyer they then went to a notary public, John E. Rinehart, who executed the certificate of acknowledgment. This was corroborated by Rinehart, who also testified that he subsequently called on Spulak, in company with Meyer, and had Spulak identify his signature. One of plaintiff's attorneys testified that before trial Rinehart told him that he signed the certificate when the deed was completely blank, upon Meyer's statement that he (Meyer) intended to sign it as grantor. Meyer then took the deed to Title and Trust Company, which affixed revenue stamps showing a consideration of $35,000, had it recorded, and issued its owner's policy of title insurance in the name of defendant Meyer.

Meyer and Suetter immediately set about trying to sell the timber, and on February 10 and 11 they dealt with the Avisons. After a visit to the Spulak place, where they examined the timber but did not talk to Spulak, Meyer executed and delivered a timber deed to the Avisons for a total price of $60,000, of which $30,000 was paid on February 11, and the balance was to be paid within 45 days. The Avison timber deed was never recorded.

Meyer had previously given Suetter an option to buy the timber for $47,000, the total consideration for the option being $1, and before closing the sale to the Avisons, Suetter surrendered his option back to Meyer in return for Meyer's agreement to pay Suetter $10,500. Upon getting the $30,000 down payment from the Avisons, Meyer paid Suetter the $10,500, and they then went together to see Spulak, still on February 11. At that time, according to Meyer, he offered Spulak $30,000 in cash and a promissory note for $5,000, to make the full purchase price. He testified that Spulak refused to close the deal on that basis, and instead asked for payments of $500 per month. Meyer then paid Spulak $1,000 (supposedly representing the payments for January and February) and Spulak signed a receipt acknowledging that arrangement. Meyer testified that some time later he gave Spulak a demand note for $34,000, and that Spulak still had it at the time of trial. He also testified that Spulak refused the $500 payment for March.

Spulak testified that about a week after the January 29 visit defendants came out and paid him $100, and when he "got after them" for not "coming down to the agreement," they came back four or five days later with the $1,000 payment. He denied that they ever offered to pay him any more money; but he said

that about a week after this suit was started, defendants asked him to sign a release in exchange for a note for $32,400. He testified that he refused to accept the note, because it wasn't the agreement, and he denied ever having received the $34,000 note about which Meyer testified.

On February 19, 1953, Meyer and his wife executed and delivered to one Frank Pender a warranty deed conveying the property to Pender, without reserving either the timber or the minerals. The Pender deed was recorded after this suit was started. The testimony is confusing as to the actual consideration for this deed, but it was apparently a security transaction, with an agreement to reconvey upon the repayment of certain amounts borrowed from Pender by Meyer.

### The Decree

The trial court held that the defendants Meyer and Suetter fraudulently conspired to have plaintiff execute the deed, in blank, and the option:

"* * * assuring plaintiff they were purchasing said property from him for $2,500;000.00, when in fact the Defendants had no intention of giving a substantial sum as consideration for this transaction and fraudulently and falsely inserted the purchase price in said option at the sum of $35,-000.00, well knowing said plaintiff could not see the figures."

It further held that the Avisons were not bona fide purchasers, and that the timber was reasonably worth $60,000.

The decree provided: (1) that the deed from Spulak to Meyer be cancelled, and plaintiff was held to be the owner of the property in fee simple; (2) that the timber deed from Meyer to the Avisons be cancelled; (3) that the Avisons recover from Meyer and

Suetter the sum of $28,900, with interest, representing the $30,000 paid by the Avisons to Meyer and Suetter, less the $1,100 deposited in court by plaintiff Spulak; (4) that the Avisons be subrogated to the right of Meyer and Suetter to recover the $1,100 paid to Spulak, and that the Avisons receive that amount deposited in court by Spulak, to complete the restoration of the down payment made by the Avisons for the timber; (5) that the $30,000 tendered into court by the Avisons be returned to them; and (6) that the Avisons recover costs and disbursements from Meyer and Suetter, with no other costs or disbursements allowed.

## *Appellants' Contentions*

■ Appellants devote much of their argument to a claim that the Avisons were bona fide purchasers for value, and that the trial court erred in holding to the contrary. Under these circumstances, that is a claim of which only the Avisons could take advantage. If the deed from Spulak to Meyer was procured by fraud, Meyer (and Suetter, if he participated), cannot obtain insulation from the consequences of the fraud by procuring an innocent purchaser before the fraud is discovered, so long as that purchaser does not assert his rights. The Avisons did not contend that they were bona fide purchasers, they have not appealed, and they are apparently satisfied with the decree. Therefore, our principal inquiry is limited to the transaction between Spulak on the one hand and Meyer, or Meyer and Suetter jointly, on the other.

As to that transaction, defendants' argument assumes that the basis of the decree granting rescission was inadequacy of consideration, and they contend that inadequacy of consideration is not sufficient ground for cancellation of a deed. But we do not so

understand the trial court's decision. The basis for cancelling the deed was not mere inadequacy of consideration, but rather the fact that defendants misrepresented the consideration, knowing that Spulak could not read the figures.

■ On that issue, the evidence is conflicting and irreconcilable. There is ample and persuasive evidence to support the finding of fraud, however, and giving due weight to the trial court's superior opportunity to judge the credibility of witnesses, we agree with that finding. The trial court's determination of the facts is corroborated by a number of circumstances which cast doubt upon the defendants' version. For example:

(1) Meyer's claim that Spulak refused Meyer's tender of full payment, and instead insisted upon monthly payments without interest, is inherently improbable.

(2) It is admitted that the notarial certificate of acknowledgment was false. While an acknowledgment may not be essential to the validity of a deed between the parties, defendants' participation in the falsehood does not inspire confidence in the remainder of their story.

(3) Meyer's admission that mineral rights were reserved, and his claim that a separate agreement was being made on mining, are inconsistent with the fact that neither the deed nor the option makes any such reservation. They are also inconsistent with Meyer's later deed to Pender which did not reserve either minerals or timber.

(4) No satisfactory explanation has been made as to why both an option and a warranty deed were taken at the same time. In Meyer's testimony he vacillated as to whether or not he considered the option as still effective after getting the deed. But in his answer

he alleged that his alleged tender of $35,000 on February 11, 1953, was "in pursuance of exercising his option." If that is his position, then the deed was not intended to be effective upon its delivery January 29. It would be consistent, however, with his testimony that the purpose of getting the deed on January 29 was merely to enable him "to see if you own the place."

■ If the deed was delivered only for the purpose of checking the title, and the governing instrument was the option, then the delivery of the deed did not operate to pass title, and the recording of the deed and the sale of the timber prior to the exercise of the option were without authority. *Allen v. Ayer*, 26 Or 589, 593, 39 P 1; *Burns v. Kennedy*, 49 Or 588, 591, 90 P 1102; *Freeman v. Alexander*, 61 Or 263, 121 P 961; *Lancaster v. May*, 194 Or 647, 654, 243 P2d 268.

■ Under the latter hypothesis the deed was ineffective, and defendants' rights, if any, were only under the option. But defendants' own evidence shows that the option was never exercised according to its terms. The option called for a full payment of $35,000, whereas Meyer's testimony showed that at the time he purportedly exercised the option he tendered only $30,000 in cash plus a note for $5,000. Spulak was not required to accept a note in lieu of cash. The purported tender in Meyer's answer, even if effective for any purpose in the absence of actual payment into court, was not within the period allowed by the option.

Thus defendants are in a dilemma. If they claim that the deed was effective to pass title on January 29, their claim is refuted by Meyer's own testimony that the deed was only to permit him to check the title and by his pleading that he exercised the option on February 11. But if they rely on the option, to give retroactive life to the deed, they are faced with the fact that the option was never fully performed.

Defendants next claim that the court erred in cancelling the deeds in the absence of necessary parties, namely: (1) Meyer's wife, and (2) Frank Pender.

As far as Mrs. Meyer is concerned, she was not a party to either the Spulak-Meyer deed or the Meyer-Avison deed, and she did not participate in either of those transactions. She did sign the Meyer-Pender deed. Her only interest would be that of inchoate dower, if her husband acquired title (ORS 113.010). Since her rights, if any, would be wholly derivative, and dependent on his, she was not a necessary party. Restatement of the Law of Property, Vol 1, Appendix p 2.

As to Frank Pender, the weight of authority seems to be that in a suit for cancellation by the grantor against the grantee, one to whom the grantee has conveyed the premises is not a necessary party, and his rights, if any, are not affected by the decree. 9 CJ 1229, Cancellation of Instruments § 134; 12 CJS 1032, § 54(b)(1).

That should be particularly true when, as here, the deed was apparently intended only as security and not as an absolute conveyance. By analogy, a lienholder who is not made a party to a foreclosure suit is not affected by the decree. *Giesy v. Aurora St. Bank*, 122 Or 1, 6, 255 P 467, 256 P 763; *Portland Mortgage Co. v. Creditors Protective Ass'n.*, 199 Or 432, 439, 262 P2d 918. At the time of argument plaintiff's attorney expressed agreement to the proposition that plaintiff take back the land subject to any rights that Pender might have. Under the circumstances Pender's absence was not fatal to the proceedings.

Defendant Suetter, in his separate appeal (submitted in joint briefs with defendant Meyer), contends that the court erred in holding him jointly liable with

Meyer for return of the consideration paid by the Avisons for the timber.

■ From our study of the evidence we are satisfied that the court was correct in finding that Suetter participated with Meyer in perpetrating the fraud, and that he shared the proceeds of the sale to the Avisons. Of necessity, such matters may be proved by circumstantial evidence. The transaction whereby, on the same date that Meyer received the Spulak deed, he gave Suetter an option on the timber for $1, and then when the sale to Avisons was closed he paid Suetter $10,500 for his prior agreement to release the option, was patently a subterfuge to enable Suetter to share in the spoils.

Suetter testified that while he spent some of the money for various purposes of his own, he also paid some of it back to Meyer. For example:

"Q How much did you pay back to him?
"A In case of this deal if there was anything wrong, he wanted it secure so he could kick back with the money, so I left him, at least—he is sitting right here—nine thousand dollars for that purpose.

"Q So you paid the money back to Mr. Meyer so he could kick out of the deal if it was all sour? Is that right?
"A Yes, that's right."

We cannot determine from the confused record before us how much Meyer and Suetter each ultimately kept out of this transaction. But each shared to some extent, and the joint judgment against both of them was proper. We intimate no opinion as to whether either would have a right of contribution against the other if he pays more than his due proportion in satisfying the judgment.

The decree is affirmed, with costs to respondent.