Argued April 6, affirmed May 2, 1978

# LARSON et ux, *Respondents,*
## *v.*
# TRACHSEL et ux, *Appellants.*
## (TC A 7607 10684, SC 25414)

577 P2d 928

Gary M. Bullock, Portland, argued the cause and filed the brief for appellants.

Marvin S. Nepom, Portland, argued the cause and filed the brief for respondents.

Before Denecke, Chief Justice, and Tongue, Bryson and Linde, Justices.

TONGUE, J.

## TONGUE, J.

This is a suit for specific performance of an option for the purchase of real property. Plaintiffs sought to exercise the option, but defendants refused to sell, contending that plaintiffs had not exercised the option in accordance with the terms of the option agreement. The trial court entered a decree in favor of plaintiffs for specific performance. Defendants appeal. We affirm.

Defendants are the owners of real property in Multnomah County, including a house, garage and barn. Plaintiffs were the lessees of that property under a written lease. On June 2, 1975, in consideration of $250 and the execution of that lease, the parties signed a separate option agreement under which plaintiffs were granted an option for a period of one year to purchase that property for $48,000, with the right to assume the outstanding mortgage on the property and to pay the balance to defendants.

Defendants rely upon the rule that an option for the purchase of real property must be unconditional and must be exercised strictly in accordance with the terms of the option agreement.[1] Defendants contend that plaintiffs did not, within one year, make an unconditional offer to purchase the property under the terms of the option agreement, but demanded that it be sold to them on terms inconsistent with the terms of that agreement. More specifically, defendants contend that plaintiffs wanted to purchase the property, but under a land sales contract, the terms of which were not agreed upon, rather than by payment in cash or by assuming the existing mortgage and payment of the balance to defendants, as provided by the terms of the option agreement.

Plaintiff Thomas Larson testified, on the contrary, that in February or March 1976, well within the

---

[1]Defendants cite *Herndon v. Armstrong,* 148 Or 602, 608, 36 P2d 184, 38 P2d 44 (1934); *Leadbetter v. Price,* 103 Or 222, 202 P 104 (1922); and *U.S. National Bank v. Meyer,* 213 Or 1, 321 P2d 1054 (1958), among other cases.

one-year period, he "unequivocally" exercised the option and gave oral notice to defendants that plaintiffs "were exercising the option to purchase the property either by cash out or by assuming [defendants'] loan"; that it was the defendants who desired to sell the property under a land sales contract for income tax reasons; that Mr. Larson requested defendants to "give me the terms" for such a contract, because he wanted to know the amount of the down payment and monthly payments, but that the parties never reached an agreement on such terms prior to June 2, 1976 (the end of the one-year period for exercise of the option).

On or about July 10, 1976, plaintiffs made a loan application to a savings and loan association for $41,800 and that application was approved. Plaintiff Thomas Larson testified that he had available an additional $1,700 in cash from his business, making a total of $43,500, representing the purchase price of $48,000 less a deduction of $4,500 for the value of a barn which had been destroyed by fire, as agreed upon by defendants, according to plaintiff's testimony. Upon defendants' refusal to sell the property plaintiffs then filed this suit for specific performance on July 25, 1976.

Although we review the record de novo on appeal in a suit in equity, we nevertheless give considerable weight to findings of fact by the trial court in such a case, particularly when, as in this case, there is a direct conflict in the testimony. *Almond v. Anderegg,* 276 Or 1041, 1043, 557 P2d 220 (1976). In such a case the trial judge, having had the opportunity to observe the demeanor of the witnesses, is in a much better position than in this court to determine the credibility of the witnesses. With these considerations in mind we have reviewed the record and agree with the findings by the trial court, as expressed in his oral opinion at the conclusion of the trial, that "there had been an effective notification by Mr. Larson of their intention to exercise the option"; and that plaintiffs had shown

that they were ready, willing and able to exercise the option.

■ As held by this court in *Killam v. Tenney,* 229 Or 134, 150, 366 P2d 739 (1961):

> "* * * Where there is nothing in the option limiting the way in which notice of its exercise is to be conveyed, anything that amounts to a manifestation of the optionee's determination to accept is sufficient. * * *"

■■ It follows that notice of an election to exercise an option need not be in writing and need not be accompanied by a tender of the purchase price unless so required by the terms of the option agreement; provided, of course, that the notice satisfied the terms of the agreement and was an unconditional "manifestation of the optionee's determination to accept." These requirements were satisfied in this case. As also held in *Killam* (229 Or at 150):

> "* * * Upon the seasonable unqualified acceptance of the offer there would emerge a valid bilateral contract which the courts will specifically enforce. * * *"

■ Finally, defendants contend that plaintiffs' exercise of the option was insufficient because "plaintiffs' attempt to exercise the option would not be for the price of $48,000, but for $48,000 less an adjustment for the value of the barn on the property that was destroyed by fire," with the result that plaintiffs' performance "was conditioned upon defendants granting plaintiffs an adjustment for the $4,500 received as insurance proceeds as a result of the barn fire," citing *Strong v. Moore,* 105 Or 12, 207 P 179 (1922).

In *Strong* it was held (105 Or at 24-25) that if a building is destroyed by fire before the exercise of an option to purchase the property on which it is located the optionor "is not required to account for [the insurance proceeds] to the optionee." In this case, however, defendant Fred Trachsel testified on trial that he was "agreeable that the $4,500 should be as a set off against the purchase price" and that "there is no contention about that."

[ 251 ]

For these reasons we affirm the decree of specific performance, as entered by the trial court.