Argued February 21, affirmed May 21; 1979

THOMPSON et al, *Respondents,*

*v.*

PARKE et ux, *Appellants.*

(No. 23146, CA 11581)

595 P2d 499

Maxwell Donnelly, Portland, argued the cause and filed the briefs for appellants.

[359]

Harold L. Olsen, St. Helens, argued the cause for respondents. With him on the brief was Vagt, Olsen & Coon, St. Helens.

Before Schwab, Chief Judge, and Tanzer, Richardson and Roberts, Judges.

RICHARDSON, J.

## RICHARDSON, J.

This is an appeal by sellers from a decree in equity ordering specific performance of an option to purchase real property.[1] Our review is de novo. We give considerable weight to the trial court's findings of fact, especially in instances where there is a conflict in testimony. *Larson v. Trachsel,* 282 Or 247, 250, 577 P2d 928 (1978).

The history of this transaction is important. Sellers, California residents, are owners of certain unimproved real property in Columbia County, Oregon. In the spring of 1976, buyers, residents of Columbia County, learned that this parcel of land was for sale and began negotiation with sellers. By January of 1977, after considerable negotiations, the parties reached a tentative agreement on an option to purchase the property and buyers had their attorney prepare and mail to sellers a purchase option contract, together with the agreed consideration of $700. The agreement provided the option could be exercised by payment in cash or in installments. Sellers took their copy of the option to their attorney. The agreement was redrafted by eliminating the provision which authorized buyers to exercise the option through the payment of the purchase price in cash. The option as modified provided for an installment sale, with ten percent interest on the unpaid balance, and that buyers could exercise the option by making a down payment and executing a note and mortgage. It was to be open for 30 days. On January 26, the sellers signed the modified option contract and sent it back to buyers as a counter offer. Upon receipt of the counter offer buyers telephoned sellers to renegotiate the interest rate on the installment balance. They told sellers that they were going to exercise the option if the interest rate were lowered to seven percent. The next day, February 2, 1977, sellers, by return telephone call,

---

[1] Options to sell land can be specifically enforced. *Larson v. Trachsel,* 282 Or 247, 577 P2d 928 (1978).

accepted buyers' interest term. Sellers then called buyers' attorney's office and spoke to her secretary. They told her that they accepted a lower interest rate and for her to send them a copy of the option as it was revised. Sellers also told the secretary to have the attorney prepare all the necessary papers to close the transaction, without a letter of confirmation of the changes, because they wanted to proceed as rapidly as possible.

On February 8, buyers' attorney sent a copy of the revised option showing the reduced interest rate to sellers, but they did not receive it as they were on their way to Oregon. On February 10, sellers arrived at buyers' attorney's office. The attorney was not in, but her secretary was. She had the copy of the option, signed by sellers, which sellers had sent on January 26. While one of the sellers, Fred Parke, was present and looking over her shoulder the secretary changed the option by pen and ink to reflect the agreed upon interest rate. Although the sellers dispute the secretary's testimony that she made the changes by Fred Parke's authorization, we conclude from the credible evidence that the changes were authorized by Fred Parke. It is also clear from the evidence and the conduct of the sellers that Fred Parke was acting as an agent for his wife in the negotiations. The fact that she may not have specifically authorized the revision of the option by the secretary does not defeat her obligations under the agreement.

Sellers then contacted buyers and conferred with them the next morning. Sellers proposed a cash sale in lieu of installment payments, which was a complete turnabout from their prior position. Buyers agreed, and the parties went to buyers' credit union to secure the necessary financing. The manager of the credit union informed them that the money was available but that he needed the deed and mortgage for purposes of security. Sellers returned buyers' $700 check and were given one for $350, which they kept. The parties

then had buyers' attorney draw up an escrow agreement and deed which were executed. The escrow agreement provided, in relevant part, that the attorney, as escrow agent, was to record the deed when sellers' bank confirmed that the funds had been deposited. The escrow agreement was to continue for 10 days. The funds were not transferred from the credit union that afternoon, however, because the manager was ill and had gone home.

On Saturday morning the parties went out to view the real estate. The sellers had not seen the property for some time. On Sunday morning sellers went to the home of the vice president of their bank and left him a note instructing him not to accept any funds on behalf of buyers from the credit union. On Monday, February 14, sellers went to the attorney's office, demanded return of the deed and escrow instructions, and informed the attorney that they had rescinded their offer. After they returned to California, sellers contacted buyers with a new proposal concerning the same real property.

Buyers sued, seeking specific performance of the option as orally modified. The escrow instructions were offered as written memorandum of the oral modification of the option whereby sellers agreed to accept cash rather than the first installment payment as the event which triggered the exercise of that option. The trial judge agreed and in his decree ordered specific performance of the option upon payment of the purchase price into the court. Sellers argue that there was no evidence to support a finding that the option was modified and assert that the verbal agreement to sell for cash was a new contract for the sale of the land, superseding the option.

The court's decision was warranted by the record. The written option revised by the secretary was an enforceable contract. Sellers argue it was not because the revisions were made after they had signed the agreement. The implication of the trial court's decree

is that the court believed the secretary's version that the changes were authorized by Fred Parke. The changes conformed the written agreement to the prior oral agreement of the parties respecting the interest rate. The credible evidence also indicates this enforceable written option was orally modified the next day to provide the option could be exercised by a cash payment. The escrow agreement was not a reflection of a new offer to sell; it was the method agreed upon by the parties to close the transaction. The buyers' credit union manager had suggested an escrow as a means of completing the transaction and of obtaining transfer of the deed and mortgage to be used as security for buyers' loan.

There was consideration for the option. Sellers acceptance of the $350 check was consistent with the terms of the written option. It provided that if the option was exercised in less than 30 days a pro rata portion of the option consideration would be credited to the purchase price. Since the option was to be exercised by a single cash payment deposited in escrow, the return of one-half of the option consideration left the balance in the hands of the sellers as consideration for the time the option was open, i.e., until it was exercised.

██ Because there was an enforceable option as orally modified, supported by consideration, the sellers are not free to withdraw the option prior to its expiration without the consent of the buyers.[2] *Strong et al. v. Moore et al.,* 105 Or 12, 207 P 179, 23 ALR 1217 (1922). The fact that the buyers did not tender payment to sellers does not defeat their right to specific performance of the option agreement. Buyers had a loan committment from the credit union and were ready, willing and able to pay the cash price for the property. They were notified the sellers' bank no longer had

---

[2] Defendant does not contend that the oral modification of the written option agreement violates ORS 41.580.

authority to accept the funds and thus a tender would have been futile because of the actions of the sellers.

Affirmed.