Submitted on record and briefs June 23,
affirmed as modified August 11, 1980

# SKINNER,
## *Respondent.*
### *v.*
# KEELEY,
## *Appellant.*

## (No. 43-638, CA 16472)

615 P2d 382

David J. Edstrom, Portland, filed the brief for appellant.

Richard Skinner, Portland, filed the brief pro se for respondent.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

In this suit to foreclose a nonpossessory chattel lien under ORS 87.216 et seq.,[1] defendant appeals from the trial court's order entering a lien in favor of plaintiff. Defendant also assigns error to the trial court's entry of a judgment against defendant for any deficiency remaining unpaid after sale of the chattel and the award of both reasonable attorney fees under ORS 87.336 and attorney fees as costs. We modify the judgment, and affirm.

In late October 1978, plaintiff Richard Skinner, who is in the business of designing and repairing various types of radios, was contacted by John McDonald concerning the possible repair of two used mobile transceiver units owned by McDonald. Skinner agreed to examine the units to determine what needed to be done and what could be done to repair them. On October 30, 1978, after determining the necessary work and gathering the pertinent cost information, Skinner called McDonald and gave him three different estimates based on the features desired for each unit. The transceivers were completely inoperable at the time. Thus, these estimates did not include any hidden defects which could only be ascertained upon installation of the parts ordered and attempting to operate the

---

[1] ORS 87.216 provides:

"A person who makes, alters, repairs, transports, stores, provides services for or performs labor on a chattel at the request of the owner of the chattel has a lien on that chattel for the reasonable or agreed charges for the labor or services he performs and for the materials he furnishes in connection therewith."

"Owner" is defined in ORS 87.142(13) to include:

"(a) A person who has title to a chattel or real property;

"(b) A person who is in possession of a chattel or real property under an agreement for the purchase thereof, whether the title thereto is in him or his vendor; or

"(c) A person who is in lawful possession of a chattel or real property."

transceivers. Later that same day or early the next, McDonald called Skinner and selected the features desired. Skinner ordered the parts on October 31. Skinner was told by the parts distributor, however, that before it could fill the order the distributor had to know the frequencies on which the transceivers, used in communications from a fixed base to an automobile, would be used. When he contacted the mobile communications service to obtain frequencies, Skinner was told that in order to issue frequencies the service would have to know who the actual user of the units would be. Skinner then called McDonald, who for the first time gave him the name of Ken Keeley, defendant here, who on October 31, 1978, had purchased one of the units sight unseen from McDonald for $1,100. Skinner then proceeded to order the necessary parts.

On November 8, 1978, Keeley called Skinner. During this call Skinner told Keeley generally what he was doing with Keeley's transceiver, and discussed with Keeley the licensing requirements for use of the unit and the problems of installation. On November 16 or 17, 1978, Skinner was told by a parts supplier that crystals much more expensive than anticipated would be needed to make the units operable. Up to this time he had performed no repairs on the transceivers. Skinner prepared a revised bid and, after calling McDonald to inform him of the change and to find out whether he should proceed with the work, and after waiting to receive the parts, he started work on the units. After this time, Skinner had no further contact with McDonald. He did have several contacts with Keeley during the period in which he was repairing the transceiver. He testified that he started work on Keeley's unit first, since Keeley wanted the transceiver repaired and installed in his truck as soon as possible. Keeley brought his truck to Skinner's shop at least

three times for Skinner to perform work preparatory to installation. On the first of these occasions Skinner and Keeley had an extensive talk about the installation. Skinner was also in telephone contact with Keeley during this period concerning problems encountered in repair. Skinner testified that all of the work was done with Keeley's full knowledge. When the final installation in Keeley's truck was complete, Skinner presented Keeley with the bill, and told him, "I expect to get paid." At this time, Keeley told Skinner, according to Skinner's testimony, that Skinner should look to McDonald for payment. Subsequently, Skinner filed for a lien for his labor and materials in repairing the transceiver.

Defendant first argues that the evidence was insufficient to show that McDonald was defendant's agent for the purpose of contracting for the repairs or that defendant directly contracted with plaintiff for the repairs. Under defendant's theory of the case on appeal, the $1,100 payment to McDonald for the transceiver was to cover both the price of the unit plus the cost of repairing the unit and installing the unit in his truck, although the amount for repair and installation was not specified. McDonald then made a separate agreement on his own behalf with Skinner for the repair and installation of the transceiver. This theory is inconsistent with some of Keeley's testimony at trial, where he stated that he never authorized McDonald to have the transceiver repaired and did not know when he purchased the unit that it needed repair. Further, defendant's testimony at trial is not consistent with the allegations of his cross-complaint against third-party defendant McDonald,[2] in

[2] Defendant brought an action for indemnity against McDonald to recover any sums plaintiff may be awarded against defendant. After hearing defendant's prima facie case against third-party defendant McDonald, the court entered a default judgment for defendant.

which Keeley alleged that under his purchase agreement with McDonald "[t]he cost of the transceiver was $700.00 and the cost for its repair to working condition and its installation in a vehicle of Ken Keeley's was $400.00. John H. McDonald agreed with Ken Keeley to arrange for the repair and installation of the radio and payment for it."

■ The trial court stated in oral findings at the close of the evidence that plaintiff prevailed, either on the basis that defendant originally contracted for the work through his agent, McDonald, or that through his later contacts with Skinner defendant ratified the contract. Although the trial court made no express findings on credibility, its general finding against defendant indicates that it resolved the credibility issues raised by defendant's testimony against defendant. The trial court's evaluation of the witnesses is entitled to considerable weight. *Larson v. Trachsel,* 282 Or 247, 577 P2d 928 (1978).

■ Even if, as defendant contends, McDonald was not originally authorized to enter into a contract for repair of the chattel which could subject the chattel to a lien in favor of a third party, the facts support the conclusion that Keeley ratified the original agreement between McDonald and Skinner. Before Skinner performed any repairs on Keeley's transceiver, Skinner had been informed by McDonald that Keeley was the owner of the unit and had had an extensive discussion with Keeley regarding the work. Keeley, who initiated the contact between himself and Skinner, had full knowledge of the circumstances and neither expressed surprise at the arrangements made by McDonald nor stated to Skinner any disapproval of the plans for repair. Nor did he inform Skinner that McDonald was to be responsible for payment. Keeley's failure to repudiate the transaction prior to his receipt of Skinner's bill at a time when he had full knowledge of the material facts, and his acceptance of the benefits of

the contract, amount to a ratification. *See Michel v. ICN Pharmaceuticals,* 274 Or 795, 549 P2d 519 (1976); *Cranston v. West Coast Life Ins. Co.,* 72 Or 116, 142 P2d 762 (1914); Restatement (Second) of Agency § 94 (1958).

We conclude that the trial court did not err in awarding a lien in favor of plaintiff.

■ Defendant next assigns error to the trial court's award of a deficiency judgment to plaintiff under ORS 88.010, which provides:

> "Except as otherwise provided by law, a lien upon real or personal property, other than that of a judgment or decree, whether created by mortgage or otherwise, shall be foreclosed, and the property adjudged to be sold to satisfy the debt secured thereby by a suit. Except as provided in ORS 88.070, in addition to the decree of foreclosure and sale, *if a promissory note or other personal obligation* for the payment of the debt has been given by the lien debtor or any other person as principal or otherwise, the court also shall decree a recovery of the amount of the debt against such person or persons, as the case may be, as in the case of an ordinary decree for the recovery of money. The provisions of this chapter are not intended to exclude a person having such lien from any other remedy or right in regard to such property." (emphasis added)

There is no evidence that any promissory note was given by defendant or any other person on his behalf. Although the parties disagree as to whether there was a "personal obligation" given within the meaning of the statute, neither party attempts to construe the term "or other personal obligation." Neither has any Oregon appellate case discussed that statutory requirement. Under the doctrine *ejusdem generis,* where general words follow the enumeration of specific classes of things, the general words are to be construed as restricted to things of the same type as those specifically enumerated. *E.g., State of Oregon v. Brantley,* 201 Or 637, 271 P2d 668 (1954); *Hodges v. Real Estate*

*Div.,* 40 Or App 243, 594 P2d 1286 (1979). In the context of ORS 88.010, the "other personal obligation" could be any writing other than a promissory note evidencing a debt from defendant to plaintiff. Plaintiff has not shown any such evidence of debt. The trial court erred, therefore, in awarding plaintiff a deficiency judgment.

■ ■     Finally, defendant challenges the trial court's award of attorney fees as part of "costs" under ORS 20.010 in addition to the reasonable attorney fees to which plaintiff as prevailing party is entitled under ORS 87.336. ORS 20.010 provides generally for the allowance of attorney fees as costs to the prevailing party in a judgment or decree. ORS 87.336 specifically provides for attorney fees to the prevailing party in suits to foreclose liens created by ORS 87.216 to 87.232. In light of the maxim of statutory construction that specific statutes control general statutes on the same subject, *Davis v. Wasco IED,* 286 Or 261, 593 P2d 1152 (1979), we conclude that plaintiff is entitled only to reasonable attorney fees under ORS 87.336.

Affirmed as modified.