Argued and submitted January 17, affirmed October 26, 1983, reconsideration denied January 6, petition for review denied February 15, 1984 (296 Or 487)

YING et al,
*Respondents - Cross-Appellants,*

*v.*

LEE,
*Appellant - Cross-Respondent.*

(125,005; CA A24533)

671 P2d 114

Michael J. Kavanaugh, Portland, argued the cause and filed the briefs for appellant - cross-respondent.

Robert L. Engle, Woodburn, argued the cause for respondents - cross-appellants. With him on the brief was Eichsteadt, Bolland, Engle, Schmidtman & Rohrer, Woodburn.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This case began as an action for fraud in connection with the sale of a restaurant; plaintiffs later added a claim for rescission. Defendant counterclaimed, seeking ejectment. Defendant appeals from the trial court's decree allowing "rescission" after a finding that no contract existed between plaintiffs and defendant. Plaintiffs cross-appeal from the trial court's allowing defendant $1,000 per month as the reasonable rental value of the premises. We affirm.

The restaurant is located in Woodburn. The evidence at trial showed that, despite several land sale contracts, the restaurant real property is in fact owned by Fairway Plaza Shopping Center, Inc. On April 9, 1976, Fairway Plaza sold the property on land sale contract to defendant, who operated the restaurant until August 16, 1977, when he sold the real property on contract to Hossein Homaizad. Homaizad sold the property on contract to Uncle Hank's Experience Co., an Oregon corporation, on or about October 25, 1978. Henry Martin operated the restaurant for the corporation until sometime in September, 1980.

In September, 1980, plaintiffs entered into an "agreement of sale" with Martin, who was acting on behalf of Uncle Hank's Experience Co. Under that agreement, plaintiffs were to purchase the restaurant business and the real property from Uncle Hank's Experience for $468,000, paying $38,000 in cash, $30,000 by assignment of the equity in plaintiffs' home in Vancouver, Washington, and the balance of $400,000 at $3,200 per month, with 10 percent interest. In October, 1980, defendant contacted plaintiffs and advised them that neither Martin nor the corporation owned any interest in the premises that they could sell to plaintiffs. The corporation was in default, but defendant had not foreclosed. Plaintiffs and defendant then negotiated the sale of the restaurant business and the real property, even though Fairway Plaza then had the title to the real property.

There was substantial disagreement at trial regarding what representations defendant made concerning the marketability of his title to the restaurant and what terms were agreed upon. Plaintiffs contend that defendant represented that he had marketable title to the property and that he would sell on the terms and conditions previously negotiated with

Martin. Plaintiffs further contend that defendant represented that persons of Oriental descent need not place agreements in writing and that the restaurant had been grossing a specified monthly amount of sales. On the basis of those representations, plaintiffs voided a check previously issued to Martin and issued a check to defendant in the amount of $38,000.

Defendant contended at trial that he had disclosed to plaintiffs the state of the title, that the $38,000 down payment was only a partial down payment and that plaintiffs had offered an additional $30,000 cash to complete the down payment. Defendant admitted discussing what Martin had been grossing per month and what, in defendant's opinion, the business could make with a few changes and longer hours. Defendant denied ever agreeing to accept plaintiffs' house in lieu of cash.

Plaintiffs gave defendant the check for $38,000 and took possession of the premises in the first week of November, 1980. They testified that, during the second week of November, defendant stated that he would not accept the equity in plaintiffs' house and demanded $30,000 cash. Plaintiffs claim that, also in November, they orally offered to vacate the restaurant in return for their $38,000. On December 15, 1980, however, plaintiffs' attorney wrote a letter to defendant that did not demand the return of the $38,000, but stated plaintiffs' desire to complete the transaction with certain assurances.

On January 16, 1981, plaintiffs' attorney again wrote to defendant, demanding a renegotiation of the terms of the sale and a return of the $38,000. Defendant demanded that plaintiffs vacate the property on February 6, 1981.

Plaintiffs sued defendant for fraud in the sale of the restaurant. The amended complaint alleged three claims for relief. The first alleged fraud; plaintiffs sought general and punitive damages. Counts two and three alleged intentional and innocent misrepresentations and asked for rescission of the contract.

Defendant answered by admitting that plaintiffs and defendant had "entered into certain negotiations concerning the sale of only * * * the restaurant business * * *" and denied

the balance of plaintiffs' complaint. Defendant, by counterclaim, alleged:

## "IV

"At all times herein, defendant did advise plaintiffs that said premises had previously been sold and that the prior purchasers were in default in their purchase agreement and had abandoned the restaurant property and business. That the premises were vacant and that defendant had filed suit for foreclosure of said contracts of purchase in Marion County, Oregon.

## "V

"Notwithstanding said knowledge, plaintiffs did enter into an oral agreement with defendant to purchase, occupy and operate a restaurant in plaintiffs' name and style at said premises and address. On or about November 20, 1980, plaintiffs did occupy said premises and commence a restaurant business under the name and style of 'China Town Restaurant.'

## "VI

"Said occupancy and restaurant operation by plaintiffs was with defendant's knowledge and permission and based upon plaintiffs' assertion to defendant that a standard form earnest money receipt would be entered into setting forth the oral agreement of the parties. An earnest money receipt, marked 'Exhibit A,' attached hereto and made a part hereof, was prepared and submitted to plaintiffs on or about December 24, 1980, who have subsequently failed, neglected and refused to execute the agreement, or any agreement, or pay any sums to defendant for plaintiffs' occupancy."

### Plaintiffs replied to defendant's counterclaim:

"That the aforesaid oral agreement is void, being an agreement for the sale of real property, not reduced to writing and not sufficiently clear or unequivocal as will permit secondary evidence of its content to be offered."

### After trial to the court, the trial judge found that

"* * * no contract existed and that the defendant should return to the plaintiffs the sum of $38,000.00 previously paid by the plaintiffs to the defendant, subject to a setoff of $1,000.00 per month, being a reasonable rental value of the premises during the period November 7, 1980, through April 1, 1982 * * *."

The trial court's order was captioned "Decree of Rescission."

Defendant's appeal raises three assignments of error. He first asserts that the trial court's finding that no contract existed went beyond the pleadings. Next, he contends that plaintiffs waived "rescission" by operating the restaurant for 16 months after knowledge of the alleged fraud. Finally, he argues that the evidence fails to support the trial court's judgment of $1,000 per month as fair rental value. Plaintiffs cross-appeal from the trial court's award of 16 months rental for the use of the premises. They contend that defendant was not entitled to any amount for rent, because defendant was at no time entitled to possession of the premises.

Defendant's first assignment is essentially that the trial court's finding that no contract existed was *sua sponte* and based on a theory not pled by the plaintiffs. We disagree.

■ The general rule is, of course, that the pleadings provide the framework within which relief may be granted. *See Hurlbutt v. Hurlbutt,* 36 Or App 721, 725, 585 P2d 724, *rev den* 285 Or 73 (1979); *Heintz v. Sinner et ux,* 232 Or 529, 533, 376 P2d 478 (1962).

■ Defendant's reliance on the rule of *Hurlbutt* and *Heintz* is misplaced. In the present case, the trial court's finding that no contract existed merely established both parties' failure—plaintiffs' under their claim and defendant's under his counterclaim—to show that an enforceable agreement existed: "A court cannot enforce a contract unless it determines what it is." Corbin, Contracts § 95, 394. As the court stated in *Bonnevier et ux v. Dairy Coop. Ass'n,* 227 Or 123, 361 P2d 262 (1961):

> "* * * a purported meeting of the minds in order to effect a contract must render reasonably certain all the terms of the would-be understanding so that a court, in the event of litigation, may know what each of the alleged contracting parties bound himself to do. * * *"

In the present case, the trial court, in seeking to determine whether there was a contract and, if so, the essential terms of the agreement between the parties, could not find them. That holding does not exceed the scope of the pleadings.

Defendant's second assignment of error contends that plaintiffs waived rescission by operating the restaurant

for 16 months after they had knowledge of the alleged fraud. In support of his argument defendant cites *Snyder v. Rhoads,* 47 Or App 545, 615 P2d 1058 (1980), a case involving the purchase of two dry-cleaning stores, in which we stated:

> "It has long been established that a party induced by misrepresentation to enter into a contract has an election of remedies; he may rescind the contract and be entitled to return of any consideration he has parted with or he may affirm the contract and sue for damages. *Chester v. McDaniel,* 264 Or 303, 305-06, 504 P2d 726 (1973). An election to affirm constitutes a waiver of the power to rescind. The power to rescind may also be waived by any unreasonable delay in exercising the power. *Brown et ux v. Hassenstab et ux,* 212 Or 246, 254-55, 319 P2d 929 (1957). *See also* Restatement of Contracts, § 483 (1932)." 47 Or App at 554.

In *Snyder,* this court concluded that the defendant had waived his right to rescind by retaining the property for a year and a half after discovering the alleged fraud. We observed that the plaintiff

> "* * * testified that, despite the alleged misrepresentations, he thought the businesses might generate a profit. Finally, he * * * insisted that he intended to ratify the contract. Therefore, the motion for summary judgment on the second counterclaim pleading rescission was properly granted." 47 Or App at 554.

■ *Snyder* is inapplicable to the facts of this case. Although the trial court's decree was erroneously denominated a "Decree of Rescission," the body of the decree stated that "no contract existed," because there was no "meeting of the minds." The consequences that follow from an improper hold-óver in a claim for rescission do not necessarily follow when, as here, the court grants restitution based on the finding that no contract exists

> "There are many cases in which a plaintiff is entitled to restitution even though no contract whatever has been made, or even though the defendant has been discharged from duty under an existing contract and has been guilty of no breach whatever. The field 'quasi-contractual' and 'obligations' has been steadily enlarged, as where benefits were received by mistake, or under a voidable contract that has been lawfully avoided, or under a contract the legal duties of which have been terminated by supervening impossibility. In these cases, the defendant has committed no 'breach'; and the plaintiff has

no remedy in 'damages,' being restricted to restitution in order to prevent unjust enrichment." Corbin, Contracts § 1104, 558 (1964).

The trial court, attempting to put the parties in *status quo ante,* properly granted restitution.

■■    Defendant's final assignment is that the trial court erred in determining that $1,000 per month was the fair market rental of the restaurant. Both parties submitted expert testimony on the question. Defendant's expert testified that the value was $3,000 to $3,500 per month. Plaintiffs' expert testified that the reasonable rental value was $1,000 per month. Although our review is *de novo,* we nonetheless accord considerable weight to findings of fact by the trial court, particularly when there is a direct conflict in the testimony. *Almond v. Anderegg,* 276 Or 1041, 557 P2d 220 (1976). In this case, there was credible testimony from both parties on fair market value, and we perceive no basis on which we can improve on the trial court's determination. It is affirmed. *See Larson v. Trachsel,* 282 Or 247, 577 P2d 928 (1978).

Plaintiffs cross-appeal the trial court's award of 16 months' rental on the use of the premises. They urge that the defendant at no time was entitled to possession of the premises and that, therefore, defendant was not entitled to rental payments from plaintiffs for the period that they were in possession.

Plaintiffs' assignment of error states:

"THE COURT ERRED IN AWARDING THE DEFENDANT RENTAL IN ANY AMOUNT FOR THE PREMISES DURING THE PERIOD NOVEMBER 7, 1980, THROUGH APRIL 1, 1982, AS A SETOFF AGAINST PLAINTIFFS' JUDGMENT AGAINST DEFENDANT."

The assignment does not set forth verbatim any way in which this theory was brought to the attention of the trial court. There is no intelligible reference to the transcript. We decline to review the transcript to determine if a proper motion was made, and we do not reach the issue. ORAP 7.19; *State v. Mendenhall,* 53 Or App 174, 631 P2d 791 (1981). *H & M Enterprises v. Hamilton,* 49 Or App 613, 621 P2d 57 (1980).

Affirmed.