Argued and submitted September 16, 1991; resubmitted In Banc April 15, affirmed September 16, reconsideration denied November 12, 1992, petition for review denied January 26, 1993 (315 Or 313)

# Mike SULLIVAN,
## *Appellant,*

*v.*

# Jeff KIZER,
## Susan Boyd, Sue Buel,
## Jan Fouries, Bill Hurliman,
## Jo McIntyre and Wade Miller,
## *Respondents.*

## (CV90-063; CA A67063)

839 P2d 227

Robert D. Durham, Portland, argued the cause for appellant. With him on the briefs were Mark S. Toledo and Bennett & Durham, Portland.

Lisa E. Lear, Portland, argued the cause for respondents. With her on the brief were Chrys A. Martin, David A. Ernst, and Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland.

WARREN, J.

Edmonds, J., dissenting.

## WARREN, J.

Plaintiff appeals a judgment dismissing his claim for misapplication of public funds under ORS 294.100(2) for failure to allege facts sufficient to constitute a claim for relief. ORCP 21A(8). We affirm.

Plaintiff alleges that he is a property owner and registered voter in McMinnville School District No. 40 (District), has children in a school administered by District and pays taxes for support of District's schools. Defendants are public officials who are members of the District School Board (Board). District's school teachers are represented by the Mid-Valley Bargaining Council (MVBC). In February, 1990, MVBC called a strike by District's teachers. During the strike, District hired teachers to substitute for the striking teachers. The amended complaint also alleges, in part:

"7. Defendants proceeded to knowingly employ and to pay from public tax funds the salaries and expenses of numerous persons who were professional strikebreakers and illegal employees under ORS 662.205 to 662.225. Defendants knowing [sic] and intentionally paid several thousand dollars of public tax money to these employees for their salaries and expenses during the MVBC strike.

"8. Defendants' purpose in hiring or offering to hire and in paying these funds to the illegal employees was to assist the District in its effort to defeat the MVBC strike through the employment of professional strikebreakers, all in violation of ORS 662.205 to 662.225. Oregon law forbids the hiring of such employees and does not authorize the payment by defendants from public tax funds of the salaries and expenses of such employees.

"9. By knowingly and intentionally paying thousands of dollars of public tax money to these employees, whose hiring was forbidden by law, and whose payment for services is not authorized by law, defendants have misapplied substantial amounts of public tax money, for which defendants are liable under ORS 294.100."

A motion under ORCP 21A(8) admits the well-pleaded allegations of fact in the complaint. We determine only whether those facts are sufficient to state a claim. *Keltner v. Washington County*, 310 Or 499, 502, 800 P2d 752 (1990). Our inquiry is whether plaintiff's allegations state a claim under ORS 294.100, which provides, in part:

"(1)  It is unlawful for any public official to expend any money in excess of the amounts, or for any other or different purpose than provided by law.

"(2)  Any public official who expends any public money in excess of the amounts, or for any other or different purpose or purposes than authorized by law, shall be civilly liable for the return of the money by suit of the district attorney of the district where the offense is committed, or at the suit of any taxpayer of such district."

Plaintiff argues that, although District has the general statutory authority to hire teachers and "transact all business," ORS 342.505 and ORS 332.072,[1] it did not have authority to hire professional strikebreakers[2] as substitute teachers because of ORS 662.215.[3] Therefore, the payment for services of professional strikebreakers was an expenditure

---

[1] ORS 342.505(1) provides, in part:

"[T]he district school board, at a general or special meeting called for that purpose, may hire teachers and shall record such action in the minutes."

ORS 332.072 provides:

"All school districts are bodies corporate, and the district school board is authorized to transact all business coming within the jurisdiction of the district and to sue and be sued. Pursuant to law, district school boards have control of the district schools and are responsible for educating children residing in the district."

[2] ORS 662.205(5) provides:

" 'Professional strikebreaker' means a person who currently offers to replace an employee involved in a strike or lockout, for the duration of that strike or lockout; and who, within the preceding five-year period, has on two or more previous occasions offered to replace an employee involved in a strike or lockout, for the duration of that strike or lockout. However, professional strikebreaker does not include any person who is the owner of a partnership, firm, corporation, association or other entity or the family of the owner or any person designated as supervisory personnel. As used in this section, owner includes a producer of agricultural commodities or member of a cooperative association."

[3] ORS 662.215 provides:

"No employer shall:

"(1) Knowingly utilize any professional strikebreaker to replace an employee involved in a strike or lockout, for the duration of that strike or lockout.

"(2) Recruit, solicit or advertise for individuals to replace employees involved in a strike or lockout, for the duration of the strike or lockout, unless the employer gives notice to such individual that there is a strike or lockout at the place at which employment is offered and the employment offered is for the purpose of replacing an employee involved in the strike or lockout, for the duration of such strike or lockout."

of public money for a "different purpose than authorized by law" and is actionable under ORS 294.100(2).

Under ORS 662.215, employers are prohibited from knowingly employing a professional strikebreaker to replace an employee involved in a strike. Defendants contend that that statute is inapplicable, because public bodies and public officials are not "employers" as defined in ORS 662.205(2).[4] If defendants are correct, they did not violate ORS 662.215 as alleged by plaintiff, even if they did hire professional strike-breakers.

■ Our role in construing a statute is to discern the intent of the legislature, ORS 174.020, beginning with the words of the statute. ORS 174.010; *Whipple v. Howser*, 291 Or 475, 479, 632 P2d 782 (1981). However, when those words do not provide sufficient insight into the legislature's intent, they are ambiguous, and we must look beyond those words to divine that intent. *Mattiza v. Foster*, 311 Or 1, 4, 803 P2d 723 (1991). No matter how broad the apparent meaning of a statute may be, if we cannot tell whether the legislature intended a statute to apply in a particular context, we must resort to extrinsic aids to construction.

■ ORS 662.205(2) provides:

> " 'Employer' means any person, partnership, firm, corporation, association or other entity, or any agent thereof, that employs an individual to perform services for a wage or salary."

That statute does not unambiguously include school districts and public officials within the definition of "employer." A school district is not a person, firm, partnership, association or corporation. It is a school district or, more generally, a public body. Moreover, we cannot discern from the face of the statute whether the legislature considered school districts

---

[4] Defendants also contend that plaintiff failed to state a claim, because he did not allege that defendants, as individuals, hired the substitute teachers. Defendants are correct that the complaint only alleges that District hired the substitutes. However, because a public body, like a private corporation, can only act through its officers and directors, the misapplication of funds by District is necessarily a misapplication by the public officials responsible for making decisions of the public body. Consequently, because the complaint alleges that defendants directed the actions of District, it adequately alleges that defendants are responsible for the contested expenditures. When we refer to acts by District, we are referring to the acts of defendants as its directors.

and public officials to be "other" entities. To the contrary, the scope of the phrase "or other entity" is patently ambiguous.

The term "entity," as defined in a dictionary, means anything "that has objective or physical reality and distinctness of being and character." *Webster's Third New International Dictionary* 758 (unabridged 1976). That definition is so broad that firms, partnerships, persons, corporations and associations fall within it. Logically, had the legislature intended the term "entity" to have such a broad meaning, it would not have included those specific types of entities within the definition of "employer." Consequently, it must have intended the term "entity" to have a narrower scope.[5]

Because we cannot tell from the words of the statute whether the legislature sought to include school districts and public officials within the definition of "employer" contained in ORS 662.205(2), we must resort to extrinsic aids to construction, beginning with the legislative history. That history shows that the legislature was alerted to potential problems of including school districts within the definition of "employer" for purposes of ORS 662.215. On April 2, 1975, the Oregon School Boards Association (OSBA) presented to the Senate Labor Committee a proposed amendment to what would become ORS 662.205 *et seq.* Minutes, Senate Labor Committee, April 2, 1975, p 2. The bill included the definition of "employer" as it is now defined. The amendment would have exempted school districts and employees of school districts from the bill. In its prepared testimony, OSBA said, in part:

> "Under the provisions of this proposed legislation, any certificated individual who acts as a substitute or offers services as a substitute for local school districts, in the case of a strike or lockout on two or more occasions within a five-year period would be defined as 'professional strikebreaker' under this law. This seems an unreasonable, additional constraint on the options open to a local school district in deciding whether or not it is in the public interest to attempt continuation of the educational program in the local district in the face of a work stoppage." Exhibit B, Senate Labor Committee, April 2, 1975.

---

[5] We need not determine precisely what the legislature intended "entity" to mean. We need only determine whether it intended to include defendants.

Two witnesses representing the Substitute Teachers Association of Oregon also testified and requested that substitute teachers be specifically excluded from the bill, because they were concerned that they could be classified as professional strikebreakers, which would restrict their ability to be employed. Minutes, Senate Labor Committee, March 12, 1975, p 9; Tape Recording, Senate Labor Committee, March 12, 1975, Tape 7, Side I, at 133-377; Exhibit J, Senate Labor Committee, March 12, 1975. The effect of the proposed bill on substitute teachers was discussed on at least two other occasions.[6] Minutes, Senate Labor Committee, May 28, 1975, p 2; Tape Recording, Senate Labor Committee, May 28, 1975, Tape 13, Side 2, at 195-397; Tape Recording, Senate Labor Committee, May 16, 1975, Tape 13, Side I at 271-371. Despite the testimony on the proposed amendment, the legislature took no action to adopt it.

The legislative history is susceptible to two plausible interpretations. The failure of the legislature to adopt the proposed amendment could mean that it intended to include school districts within the prohibition of ORS 662.215. On the other hand, the legislature's inaction could mean that it

---

[6] On May 28, 1975, before the Senate Labor Committee voted on a "do pass" motion for House Bill 2157, this discussion took place:

CHAIRMAN GROENER: "Senator Heard?"

SENATOR HEARD: "Mr. Chairman, how would this apply to substitute teachers?"

CHAIRMAN: "We've had that—"

HEARD: "I'm sorry—"

CHAIRMAN: "Question arise and we had some substitute teachers here that felt it might prohibit them from going across picket lines. I can't, Brad, do you recall, they were led by Carlson, Harold Carlson, a substitute teacher—"

UNIDENTIFIED VOICE: "Yeah, [inaudible]."

CHAIRMAN: "I don't know if you know Harold Carlson or not [inaudible]."

UNIDENTIFIED VOICE: "If they fell within the definition, a substitute teacher would, as any other employee be deemed, a professional strikebreaker, assuming if they had done this on two or more previous occasions offered themselves for employment in the situation as described, defined in page 2, line 17 through 25, they would be deemed, I believe, a professional strikebreaker."

CHAIRMAN: "Any other questions?"

Tape Recording, Senate Labor Committee, May 28, 1975, Tape 13, Side 2, at 295-397. This conversation was between the chairman of the committee and a member who had not been at the previous meeting. The reference to "page 2, line 17 through 25" refers to the definition of "professional strikebreaker," now codified as ORS 662.205(5).

thought that the definition of employer in ORS 662.205(2) did not require further expression in order to exclude school districts.

When legislative history is not dispositive on the intended meaning of a statute, we study "the language used, the statutory objective and any other evidence of the intended meaning." *Liberty Northwest Ins. Corp. v. Short*, 102 Or App 495, 499, 795 P2d 118 (1990). We also resort to rules of statutory construction, one of which is *ejusdem generis*.

> "[W]here general words follow the enumeration of specific classes of things, the general words are to be construed as restricted to things of the same type as those specifically enumerated." *Skinner v. Keeley*, 47 Or App 751, 757, 615 P2d 382 (1980).

In ORS 662.205(2), the general words "or other entity" follow the enumeration of the specific classes of persons, partnerships, firms, corporations and associations, which share the common characteristic of being *private* entities. Accordingly, following the rule, construction of the term "or other entity" should be restricted to other entities with that characteristic. That would exclude public entities from the definition of "employer" contained in ORS 662.205(2).

Two other factors militate against imputing to the legislature an intent to subject public employers to the restrictions of ORS 662.215. When the legislature has intended to include public bodies within the definition of "employer," it has expressly provided for that. *See, e.g.*, ORS 652.310(1); ORS 652.750; ORS 653.010(4); ORS 653.280(2)(a); ORS 653.295(6)(b); ORS 653.300; ORS 654.005(13); ORS 659.010(6). Moreover, the legislature has enacted a comprehensive set of laws governing the rights and responsibilities of public employers in connection with collective bargaining and strikes, but did not declare hiring strikebreakers to be an unfair labor practice. *See* ORS 243.650 to ORS 243.782. We will not impute to the legislature an intent to regulate a specific aspect of the labor relations of public employers when it has already demonstrated an ability to make clear decisions in that arena and when to do so would require us to ignore a basic rule of statutory construction. Accordingly, we hold that school districts are not included within the definition of employer under ORS 662.205(2).

Because school districts are not employers, the directors did not violate ORS 662.215. Because plaintiff's complaint is based on a violation of that statute, it fails to state ultimate facts sufficient to constitute a claim.[7]

Affirmed.

**EDMONDS, J.,** dissenting.

The majority holds that the prohibition against hiring professional strikebreakers does not apply to school districts, because they are not "employers" under ORS 662.205(2). It concludes that plaintiff's complaint, based on an alleged violation of ORS 662.215, fails to state a claim. In order to arrive at that result, the majority ignores the plain meaning of the statute and creates a new rule of statutory construction that contravenes the holding in *Whipple v. Howser*, 291 Or 475, 632 P2d 782 (1981). The majority says:

> *"No matter how broad the apparent meaning of a statute may be, if we cannot tell whether the legislature intended a statute to apply in a particular context, we must resort to extrinsic aids to construction.*
>
> "ORS 662.205(2) provides:
>
> " 'Employer' means any person, partnership, firm, corporation, association or other entity, or any agent thereof, that employs an individual to perform services for a wage or salary.'
>
> "That statute does not unambiguously include school districts and public officials within the definition of 'employer.' " 115 Or App at 210. (Emphasis supplied.)

Although the majority concedes that the definition of "entity" is broad enough to include school districts, it resorts to the rule of *ejusdem generis* as a basis to exclude them from the statute. It rewrites the definition of "employer" under ORS 662.205(2) to give effect to what *it* perceives to be

---

[7] In the complaint, plaintiff alleged that defendants were not authorized to hire strikebreakers. He did not allege that defendants could not have spent the same funds to hire substitute teachers who were not strikebreakers. Because of that, defendants also moved to dismiss the complaint, arguing that, even if ORS 662.215 applied, plaintiffs failed to allege ultimate facts sufficient to constitute a claim, because the complaint did not allege that the taxpayers were economically injured by defendants' conduct. The trial court granted defendants' motion on that basis. Because of the basis of our disposition, we need not and do not decide whether the trial court was correct.

legislative intent. The majority ignores the mandate of ORS 174.010.[1] We do not resort to legislative history or rules of statutory construction when the language of a statute is clear and expresses the intent of the legislature. *Whipple v. Howser, supra*, 291 Or at 481. In construing a statute, words of common usage are to be given their natural, plain and obvious meaning. *Perez v. State Farm Mutual Ins. Co.*, 289 Or 295, 299, 613 P2d 32 (1980). The term "any * * * other entity" means what it says: it encompasses the whole definition of the word "entity" and plainly includes school districts.

Defendants also argue that ORS 662.215 does not apply, because defendants are not "employers" under ORS 662.205(2). They point out that plaintiff failed to allege any ultimate facts showing that defendants, as individuals, hired the substitute teachers or paid their salaries. According to defendants, because District did the hiring and paid the salaries, it is the "employer" under ORS 662.215. Their argument misses the mark because of ORS 294.100(2). If District violated ORS 662.215 and that violation was authorized by defendants, then they, as public officials, may have expended money for a "different purpose than authorized by law." Violation of ORS 662.215 makes the expenditure unlawful, and ORS 294.100 imposes liability on the public officials who authorized the unlawful expenditure.

Defendants also contend that ORS 662.215 does not apply to school districts, because of public policy. They argue that the legislature would not have required school districts to hire certified teachers from a limited pool of replacements and also intend that they could incur civil liability for discharging their statutory obligation during a labor dispute. As the majority points out, the legislature did not act on a proposed amendment that would have exempted school districts and employees of school districts from the bill. This court is not authorized to insert into the statute what the

---

[1] ORS 174.010 provides:

"In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."

legislature left out. *Lane County v. Heintz Const. Co. et al*, 228 Or 152, 157, 364 P2d 627 (1961).

Another argument for affirmance of the trial court is that the complaint purportedly does not allege an economic injury to taxpayers. The proposition that there can be no liability under ORS 294.100 unless an expenditure injures taxpayers economically is inconsistent with the measure of damages available under ORS 294.100(2). That statute says that public officials who expend public money for a purpose other than that authorized by law are liable for the return of that money. Nothing in ORS 294.100 requires that taxpayers personally be injured economically. *See also Burt v. Blumenauer*, 299 Or 55, 699 P2d 168 (1985). Second, paragraph 9 of the complaint alleges a misapplication of public tax money "for which defendants are liable under ORS 294.100," thereby incorporating by reference the statutory requirement for injury. When that allegation is read with the other factual allegations in the complaint, the complaint states a claim under ORS 294.100.

ORS 662.205(2) is not ambiguous. It encompasses every "entity" that employs an individual to perform services for a wage or salary. Plaintiff's complaint alleges a claim that defendants have misapplied public tax money and are liable for the return of those funds under ORS 294.100, because they caused District to employ professional strikebreakers. Those allegations state a cognizable claim, and plaintiff is entitled to all reasonable inferences that follow from them. The function of this court is to interpret the law, not to make it. *See Foster v. Goss et al*, 180 Or 405, 408, 168 P2d 589, 175 P2d 794 (1946). The majority, by judicial fiat, creates a statutory exemption for school districts. If the legislature had intended that result, it would have said so.

I dissent.

Riggs and De Muniz, JJ., join in this dissent.