943 P.2d 337 (1997)
87 Wash.App. 715
The CITY OF SEATTLE, a municipal corporation, By and Through its DEPARTMENT OF HOUSING AND HUMAN SERVICES, Appellant,
v.
The STATE of Washington and its Department of Labor and Industries, Respondent.
No. 39240-9-I.
Court of Appeals of Washington, Division 1.
September 2, 1997.
As Amended October 7, 1997.
*338 Walter Leroy Williams, Seattle, for Appellant.
Paul Russell Cressman, Short Cressman & Burgess, Seattle, for Amicus Curiae.
Lori A. Oliver-Hudak, Olympia, for Respondent.
ELLINGTON, Judge.
We are asked to decide whether the term "other entity" in an electrical contractor licensing statute encompasses municipalities. We hold that it does, noting that other statutes contained in the same chapter employ the term in a manner that contemplates inclusion of municipal corporations and that the Legislature has, when it desired to do so, drafted explicit exclusions from the licensing statute, but has drafted no exclusion for municipal corporations engaged in residential wiring. We therefore affirm the superior court ruling enjoining the City of Seattle from proceeding with certain electrical work without obtaining an electrical contractor license.

Background
As part of a program to assist unemployed workers in gaining work experience, the City of Seattle organized the Seattle Conservation Corps (SCC). One of SCC's projects is to update light fixtures in low income family dwellings. SCC is paid by governmental agencies such as the Bonneville Power Administration to perform this service. A certified journey electrician completes the electrical work, but no certified administrator is employed as a supervisor.
When inspecting one of SCC's work sites, a supervisor for the Department of Labor and Industries issued a stop work order on grounds that SCC had not complied with the contractor licensing statute, which generally requires contractors to have a certified administrator and post a $4,000 bond. See RCW 19.28.120(3)(5). The City argued it was not obligated to obtain a contractor license because a municipality does not constitute an "entity" under the licensing statute. After losing this dispute before the Electrical Board,[1] the City filed a declaratory judgment action in superior court. The court adopted the Board's interpretation and enjoined the City from engaging in non-utility electrical contracting without a contractor license.

*339 Discussion

The issue is whether the City must obtain a contractor license. In part, the relevant licensing statute recites:
It is unlawful for any person, firm, partnership, corporation, or other entity to engage in, conduct, or carry on the business of installing or maintaining wires or equipment to convey electrical current, or installing or maintaining equipment to be operated by electrical current as it pertains to the electrical industry, without having a ... [valid] electrical contractor license[.]
RCW 19.28.120(1).
The crux of the dispute is whether the term "other entity" encompasses municipalities or is limited to private contractors. This is a question of statutory interpretation and therefore is reviewed de novo. See, e.g., Dioxin/Organochlorine Ctr. v. Pollution Control Hearings Bd., 131 Wash.2d 345, 352, 932 P.2d 158 (1997). We must interpret statutes in a manner that best achieves the legislative intent. See, e.g., Clements v. Travelers Indem. Co., 121 Wash.2d 243, 254, 850 P.2d 1298 (1993). All provisions of an act must be considered in relation to each other and, if possible, harmoniously construed to insure proper construction of each provision and to effect the Act's overall purpose. See Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc., 125 Wash.2d 305, 315, 317, 884 P.2d 920 (1994).

Overview of Chapter
The Electricians and Electrical Installations Chapter of the RCW sets forth minimum standards for certain electrical work, including the type of work at issue here. See RCW 19.28.010. A city or town may enact more stringent standards, but may not relax them. See RCW 19.28.010(3). If a municipality enacts its own electrical code, that municipality is charged with enforcing its code. See RCW 19.28.360. Otherwise, the code is enforced by the State. See RCW 19.28.210.
The licensing statute requires the contractor to post a bond and to hire an administrator. See RCW 19.28.120(3)(5). Like a journey electrician, an administrator is certified by the State after passing an examination covering safety, electrical theory, and the electrical code. See RCW 19.28.123; RCW 19.28.510(1). The administrator is a full-time supervisory employee, however, and as such has duties exceeding those of an electrician. For example, the administrator ensures that proper safety procedures are used, that all work complies with the code, that all electrical labels, permits, and licenses required to perform electrical work are in place, that corrective notices issued by an inspecting authority are complied with, and that proper ratios of certified to non-certified workers are maintained. See RCW 19.28.125; RCW 19.28.510(3).
Not all electrical work is subject to the licensing requirement disputed here. For example, individuals or entities that conduct utility work are exempted, RCW 19.28.200(1), as are property owners doing work on their own homes, businesses, or farms, RCW 19.28.610.

Application of Statute
SCC employs a journey electrician to install electrical fixtures in low-income housing units. If SCC were a private corporation, it would have to be licensed, post the related bond, and ensure that the statutory ratio of certified to non-certified electricians is maintained. See RCW 19.28.120(1)(3)(5); RCW 19.28.125(2); RCW 19.28.510(3). Because SCC is a subdivision of a municipality, the City maintains that the licensing requirement is inapplicable.
The City relies on the ejusdem generis rule of statutory construction, which provides that when the Legislature lists a series of specific terms followed by a general term, the general term must be narrowly construed so as not to render the specific terms superfluous. See Nat'l Elect. Contractors Ass'n v. Pierce Cnty., 100 Wash.2d 109, 116, 667 P.2d 1092 (1983). Here, the City argues that "other entities" must be narrowly construed to mean "other private entities." Otherwise, the City claims the preceding named entities (i.e., person, firm, partnership, and corporation) are rendered superfluous. See RCW 19.28.120. The City is correct that the ejusdem *340 generis rule suggests a narrow interpretation of "other entity." The rule is merely an aid of construction, however, and should not be blindly adhered to if the result would offend a fundamental purpose of the legislation. See Nat'l Elect., 100 Wash.2d at 116, 667 P.2d 1092. To determine whether the rule should be employed here, we must examine the surrounding statutes and interpret the licensing statute in light of the overall statutory scheme.
We first note that the chapter has broad application, as is evidenced by the Legislature's pronouncement that "[a]ll wires and equipment ... that convey electric current... in, on, or about buildings and structures... shall be in strict conformity with this chapter." See RCW 19.28.010(1). To ensure strict conformance, the Legislature made it illegal to install wiring that does not conform to the standards of the chapter, and used the same "other entity" wording:
It is unlawful for any person, firm, partnership, corporation, or other entity to install or maintain any electrical wiring, appliances, devices, or equipment not in accordance with this chapter.
RCW 19.28.260. We believe that this proscription statute plainly applies to municipalities. Otherwise, municipalities, or their constituent parts such as SCC, would be free to install substandard wiring, a result not likely intended by the Legislature.
In addition to the proscription statute, the chapter contains several sections that use the "other entity" phraseology. For example, the phrase is employed in inspection and enforcement statutes vesting the Department with authority to impose fines and to require that dangerous conditions be rectified. RCW 19.28.210(3); RCW 19.28.350. The term is also used to describe who or what is to receive a copy of an inspection report and thereby receive notice of any needed corrections or changes. RCW 19.28.250. The term is further used to identify who or what is capable of challenging the Department's interpretation of any installation or maintenance standards. See RCW 19.28.260; RCW 19.28.300.
Given the great importance of allowing the Department to require the correction of dangerous conditions caused by defective installation, the use of "other entity" in these statutes must be broad enough to encompass municipalities engaged in non-utility electrical contracting work. We know of no principled basis to construe the identical wording of the licensing statute to exclude these same municipalities.
We also note that the Legislature has drafted only two explicit exclusions to the licensing statute. The first applies to work done by property owners at their place of business, farm, principal residence, or other owned property. The exclusion also allows assistance from friends, neighbors, and relatives, individuals who, like the owners, are not ordinarily "engaged" in electrical work. In the case of dwellings, this exclusion is narrowly drawn to apply only to buildings in which the property owner makes his or her principal residence. See RCW 19.28.610.
The second explicit exclusion applies to entities engaged in utility work. This exemption excludes only work done on wires and equipment owned by the utility, and not on wires or equipment contained within a house owned or rented by the third party. See RCW 19.28.200(1). Thus, absent a circumstantial guarantee that competent work will be performed, such as where the party installing the wire will live on the premises, the Legislature has not drafted an explicit exclusion for any entity that installs wiring in the dwelling of another.
The City nevertheless suggests that concerns over the safety of SCC's installations are misplaced because it has adopted standards that equal or exceed the statutory minimums. This may be true, but it cannot affect our analysis because our construction of the licensing statute will apply equally to municipalities that have not enacted a similar regulatory scheme. The City may persuade the Legislature to adopt an exception for programs like SCC. Until that day, however, the fact that the Legislature drafted explicit exclusions for other circumstances compels us to conclude that the exclusion sought here is not authorized.
*341 We note that a similar conclusion was reached by the Attorney General, who held that municipalities were subject to State licensing and inspection requirements when installing traffic and street lights. AGO 1982 No. 2 at 2-6. This interpretation took place the year before the Legislature rewrote the chapter to include the "other entity" wording, and the parties cite nothing in the legislative history to indicate the Legislature disagreed with the AGO. The Attorney General's conclusion that the licensing and inspection statutes include municipalities is entitled to some deference, see, e.g., In re Electric Lightwave, Inc., 123 Wash.2d 530, 542, 869 P.2d 1045 (1994), and reinforces our view that the superior court correctly enjoined SCC from proceeding without a contractor license.
Affirmed.
COLEMAN, J., and GROSSE, Presiding C.J., concur.
NOTES
[1] See RCW 19.28.065.