[No. 66107-3.   En Banc.]

Argued September 9, 1998.     Decided October 22, 1998.

THE CITY OF SEATTLE, *Petitioner*, v. THE STATE OF
WASHINGTON, *Respondent*.

694

*Mark H. Sidran, City Attorney,* and *Walter L. Williams, Assistant,* for petitioner.

*Christine O. Gregoire, Attorney General,* and *Lori A. Oliver-Hudak, Assistant,* for respondent.

*Paul R. Cressman, Jr.,* on behalf of National Electrical Contractors Association, amicus curiae.

ALEXANDER, J. — We are asked in this case to determine whether the petitioner, the City of Seattle (City), falls within the scope of RCW 19.28.120(1), a statute that requires an electrical contractor's license for non-utility electrical work. We hold that the City is an "entity" subject to that statute, and, thus, affirm the Court of Appeals.

## FACTS

The relevant facts in this case are few and not in dispute. The City operates the Seattle Conservation Corps (SCC) through its Department of Housing and Human Services. The SCC prepares "unemployed, homeless adults for transition to full-time employment with sustainable hous-

ing." Clerk's Papers (CP) at 4. Its budget is funded through fee-for-service work. One of the SCC's projects is an "electrical project that changes inefficient light fixtures to high efficiency light fixtures in low income multi-family dwellings." CP at 11. The fees for the electrical project services are paid by various government agencies such as the Bonneville Power Administration.

On April 18, 1995, a certified electrical journeyman was installing electrical timers and lights at a work site in Seattle when an electrical inspector from the Department of Labor and Industries (Department) inspected the site and issued a noncompliance citation and stopwork order for an alleged failure to comply with RCW 19.28.120. The City contested the citation, arguing that a city is not an "entity" subject to the licensing requirements of RCW 19.28.120. The Department agreed to remove the stopwork order pending resolution of the dispute. Accordingly, the matter was brought before the Washington State Electrical Board for review, notwithstanding concerns on the part of the City about the appropriateness of this forum. In August 1995 the Board ruled that municipal corporations are "entities" subject to the statute.

Despite the Board's adverse ruling, the City filed a complaint in King County Superior Court for declaratory judgment and injunctive relief. Again it argued that the City was not subject to RCW 19.28.120(1). After hearing cross motions for summary judgment the trial court granted the Department's motion, holding that "the City of Seattle is an 'entity' as that term is used in RCW 19.28 and as such the City shall not engage in non-utility electrical contracting without the required licenses." CP at 185. The City appealed that decision to the Court of Appeals, Division One, which affirmed. *City of Seattle v. State*, 87 Wn. App. 715, 943 P.2d 337 (1997), *review granted*, 134 Wn.2d 1024, 958 P.2d 313 (1998). The City sought discretionary review here, and we granted its petition.

ANALYSIS

We will affirm a trial court's order granting summary

judgment only if we are satisfied, after considering the facts in the light most favorable to the nonmoving party, that "there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Barnes v. McLendon*, 128 Wn.2d 563, 569, 910 P.2d 469 (1996) (citing *In re Estates of Hibbard*, 118 Wn.2d 737, 744, 826 P.2d 690 (1992)). This is because "[s]ummary judgment exists to examine the sufficiency of legal claims and narrow issues, not as an unfair substitute for trial." *Babcock v. State*, 116 Wn.2d 596, 599, 809 P.2d 143 (1991). All questions of law are reviewed de novo. *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994) (citing *Syrovy v. Alpine Resources, Inc.*, 122 Wn.2d 544, 548 n.3, 859 P.2d 51 (1993)).

■■ As we noted above, there are no relevant facts in dispute. Accordingly, the question of law that we must resolve is whether the City is an "entity" subject to the licensing requirements of RCW 19.28.120(1). The relevant language of the statute is as follows:

> It is unlawful for any person, firm, partnership, corporation, *or other entity* to engage in, conduct, or carry on the business of installing or maintaining wires or equipment to convey electric current, or installing or maintaining equipment to be operated by electric current as it pertains to the electrical industry, without having an . . . electrical contractor license, issued by the department in accordance with this chapter.

RCW 19.28.120(1) (emphasis added). The term "other entity" is not defined, and its meaning is not plain—thus making the statute ambiguous. *See* RCW 19.28.005 (defining terms). Our approach in interpreting ambiguous statutes was well summarized in *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996):

> If the statute is ambiguous, the courts must construe the statute so as to effectuate the legislative intent. In so doing, we avoid a literal reading if it would result in unlikely, absurd or strained consequences. *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992). The purpose of an enactment should prevail

over express but inept wording. *Id.*; *State ex rel. Royal v. Board of Yakima County Comm'rs*, 123 Wn.2d 451, 462, 869 P.2d 56 (1994). The court must give effect to legislative intent determined 'within the context of the entire statute.' *Elgin*, 118 Wn.2d at 556; *State ex rel. Royal*, 123 Wn.2d at 459. Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous. *Stone v. Chelan County Sheriff's Dep't*, 110 Wn.2d 806, 810, 756 P.2d 736 (1988); *Tommy P. v. Board of County Comm'rs*, 97 Wn.2d 385, 391, 645 P.2d 697 (1982). The meaning of a particular word in a statute 'is not gleaned from that word alone, because our purpose is to ascertain legislative intent of the statute as a whole.' *State v. Krall*, 125 Wn.2d 146, 148, 881 P.2d 1040 (1994).

■ The City argues that it does not fall within the term "other entity." In support of this contention, it correctly observes that we have previously held that "[w]here the Legislature has not specifically defined a term used in a statute, resort to a dictionary to give meaning to the term is appropriate." *Dawson v. Daly*, 120 Wn.2d 782, 791, 845 P.2d 995 (1993) (citing *State v. Belgarde*, 119 Wn.2d 711, 716-17, 837 P.2d 599 (1992)). Perhaps the vaguest definition for "entity," and one relied upon by the City, is "[a] real being; existence." BLACK'S LAW DICTIONARY 532 (6th ed. 1990). It would seem hard to argue that the City does not have a "real existence."[1] The City's argument in this regard is that when the word "other" is used to modify "entity" it should be read as "other such like." Pet. for Review at 8. This argument finds some support because "other" has been defined as "[d]ifferent or distinct from that already mentioned; additional, or further. Following an enumeration of particular classes 'other' must be read as 'other such like,' and includes *only others of like kind and character*." BLACK'S LAW DICTIONARY at 1101 (emphasis added). Thus, the City contends that the rule of ejusdem generis is applicable here.

---

[1] The late Justice Matthew Hill once wryly wrote that "[s]omeone has said that semantics are the worst 'antics.' " *Boeing Co. v. King County*, 76 Wn.2d 493, 495 n.2, 457 P.2d 595 (1969).

The *ejusdem generis* rule requires that general terms appearing in a statute in connection with specific terms are to be given meaning and effect only to the extent that the general terms suggest items similar to those designated by the specific terms. In short, specific terms modify or restrict the application of general terms where both are used in sequence.

*Dean v. McFarland*, 81 Wn.2d 215, 221, 500 P.2d 1244, 74 A.L.R.3D 378 (1972) (citing *King County Water Dist. 68 v. Tax Comm'n*, 58 Wn.2d 282, 286, 362 P.2d 244 (1961); *State v. Thompson*, 38 Wn.2d 774, 777, 232 P.2d 87 (1951)). By way of illustration, we have noted that "[t]he ejusdem generis rule is generally applied to general and specific words clearly associated in the same sentence in a pattern such as '[specific], [specific], or [general]' or '[general], including [specific] and [specific].' " *Southwest Wash. Ch., Nat'l Elec. Contractors Ass'n v. Pierce County*, 100 Wn.2d 109, 116, 667 P.2d 1092 (1983) (alterations in original) (citations omitted). Accordingly, the City contends that because "or other entity" appears within the pattern "any person, firm, partnership, corporation, or other entity," RCW 19.28.120(1), the term must be intended to encompass any unmentioned *private business* entity. Pet. for Review at 8-9. We disagree. In our view, the Legislature's use of the all-encompassing introductory term "any person" defeats the City's suggestion that the terms preceding "or other entity" refer to private business entities alone. In any event, one authority notes that ejusdem generis applies only when "the statute contains an enumeration by specific words" which suggest a class that "is not exhausted by the enumeration." 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47.18, at 200 (5th ed. 1992). The sequence of "any person, firm, partnership, corporation," RCW 19.28.120(1), would seem to exhaust all classes of private entities, thus leading to the conclusion that "other entity" refers to public entities such as the City. This contradicts the City's argument that the term "entity" is in danger of being "interpreted to include every entity in the world," Pet. for Review at 9, thus consuming the specific terms used and leaving them meaningless.

The City calls our attention to two cases from the Oregon Court of Appeals as support for its ejusdem generis argument. In one case the court declined to find that a school district was an "other entity" within the scope of a statute defining an "employer." *Sullivan v. Kizer,* 115 Or. App. 206, 839 P.2d 227 (1992), *review denied,* 315 Or. 313, 846 P.2d 1161 (1993). Applying the ejusdem generis doctrine, the Oregon court noted that "the general words 'or other entity' follow the enumeration of the specific classes of persons, partnerships, firms, corporations and associations, which share the common characteristic of being private entities . . . . That would exclude public entities." *Sullivan,* 839 P.2d at 231. Part of this decision, however, was based upon the fact that there already existed "a comprehensive set of laws governing the rights and responsibilities of public employers" in a context related to the claim at issue, thus providing insight into the Oregon Legislature's intent. *Sullivan,* 839 P.2d at 231. In the instant case we do not have such a separate legislative scheme. Moreover, the three dissenting judges in *Sullivan* argued that "[t]he majority, by judicial fiat, creates a statutory exemption for school districts. If the legislature had intended that result, it would have *said so*." *Sullivan,* 839 P.2d at 233 (Edmonds, J., dissenting) (emphasis added). The view of the dissenters seems persuasive in light of the fact that the Oregon Legislature had rejected an amendment expressly exempting school districts from the statutory language in question. *See Sullivan,* 839 P.2d at 232 ("This court is not authorized to insert into the statute what the legislature left out.") (Edmonds, J., dissenting) (citation omitted).

The other Oregon case offered in support of the City's ejusdem generis argument is *Westwood Homeowners Ass'n v. Lane County,* 118 Or. App. 310, 847 P.2d 862, *aff'd,* 318 Or. 146, 864 P.2d 350 (1993), *modified,* 318 Or. 327, 866 P.2d 463 (1994). Significantly, however, the subsequent history of that case is that the ejusdem generis doctrine that was determinative at the Oregon Court of Appeals went unmentioned in a much more analytical opinion of the Oregon Supreme Court, in which that court affirmed the

Court of Appeals, but did so in reliance upon "indicative" legislative history, a number of policy reasons, and even a constitutional argument to explain why the Oregon Legislature would not have wanted to include "servitudes" within the ambit of the term "encumbrances" in a tax statute. *Westwood Homeowners Ass'n*, 864 P.2d at 359-61. Thus, the *Westwood* case is very obviously distinguishable from the present.

Moreover, "[i]t is generally held that the rule of ejusdem generis is merely a rule of construction and is only applicable where legislative intent or language expressing that intent is unclear." 2A SINGER, at 200. We will "seek help in interpreting [a] statutory section by determining legislative intent in the context of the *whole* statute and its general purpose." *Cherry v. Municipality of Metro. Seattle*, 116 Wn.2d 794, 800, 808 P.2d 746 (1991) (citing *Anderson v. Morris*, 87 Wn.2d 706, 716, 558 P.2d 155 (1976)) (emphasis added). Here the intent of the Legislature is readily apparent. In the opening of RCW 19.28.010, for example, the Legislature made it clear that "[a]*ll* wires and equipment, *and installations thereof*, that convey electric current and installations of equipment to be operated by electric current, in, on, or about buildings or structures . . . shall be in strict conformity with this chapter." RCW 19.28.010(1) (emphasis added). Again, "[s]tatutes must be interpreted and construed so that *all* the language used is given effect, with no portion rendered meaningless or superfluous." *Whatcom County*, 128 Wn.2d at 546 (emphasis added) (citations omitted). RCW 19.28.120(1) must be interpreted consistent with this rule.

The Court of Appeals found compelling the fact that municipal corporations such as the City are not expressly exempted from the coverage of RCW 19.28.120. *City of Seattle*, 87 Wn. App. at 721. RCW 19.28.200 exempts utilities. That provision had once expressly exempted "municipal corporation[s]" engaged in certain electrical installation and maintenance work. However, it was amended in 1980, in relevant part, as follows: "No license under the

provision of this chapter shall be required from any ((person, firm, corporation or municipal corporation)) utility . . . ." Laws of 1980, ch. 30, § 15, at 63. The City stresses that the term "municipal corporation" was removed in 1980, arguing that "[t]his amendment to the language of the Act was an unmistakable demonstration of the legislature's intent to remove cities, towns and municipal corporations from the electrical contractor's licensing provision." Pet. for Review at 15. This is a curious argument inasmuch as it contradicts the City's position elsewhere. After all, why would "cities, towns and municipal corporations" have to be removed from the statute's coverage if, to follow the City's logic, they were never included in the first place? Moreover, because the City is, in fact, conceding for purposes of this argument that municipal corporations *had* been included in the statute prior to the 1980 amendment, does it not necessarily follow that by *removing* mention of them in the exemptions provision the Legislature was actually *removing their exempt status?* "The exception of a particular thing from the operation of the general words of a statute shows that in the opinion of the law-maker the thing excepted would be within the general words had not the exception been made." *Tyler Pipe Indus., Inc. v. Department of Revenue*, 96 Wn.2d 785, 788, 638 P.2d 1213 (1982) (quoting *McKenzie v. Mukilteo Water Dist.*, 4 Wn.2d 103, 114, 102 P.2d 251 (1940)). By referring to this 1980 change in the statute the City itself has introduced the most damaging evidence against its position. The City cannot explain, after all, why public utility districts (PUDs), which are categorized as municipal corporations,[2] are presently exempted through RCW 19.28.200 from the licensing requirements of RCW 19.28.120 if they supposedly never fell within it. In our judgment, the Legislature's exemption of PUDs strongly implies the *inclusion* within the coverage of RCW 19.28.120 of other municipal corporations such as the City. As the

---

[2]"Municipal corporations, to be known as public utility districts, are hereby authorized . . . ." RCW 54.04.020.

Court of Appeals noted, "[t]he City may persuade the Legislature to adopt an exception for programs like SCC. Until that day, however, the fact that the Legislature drafted explicit exclusions for other circumstances compels us to conclude that the exclusion sought here is not authorized." *City of Seattle*, 87 Wn. App. at 721.

The Department refers us to a 1982 Washington attorney general's opinion (AGO) that construed RCW 19.28 and asserted that "municipalities are still required to be licensed and bonded when performing non-exempt electrical work." CP at 30. There, prior to the addition of the term "other entity" to RCW 19.28.120(1), the attorney general was relying upon a 1922 AGO understanding the term "corporation" to include "municipal corporations" in order to avoid making a then-existing reference to "municipalities" superfluous. *See* CP at 29-30. The scope of RCW 19.28.120(1) was subsequently amended in 1983, in relevant part, in the following manner: "It ((shall be)) is unlawful for any person, firm, ((or)) partnership, corporation, or other entity to engage in, conduct, or carry on the business . . . ." LAWS OF 1983, ch. 206, § 5, at 206. Those changes to the statute obviously made the coverage of the act even broader. We do not know if the 1983 Legislature was aware of the 1982 AGO, but it can also be stated, as the Court of Appeals noted, that "the parties cite nothing in the legislative history to indicate the Legislature disagreed with the AGO." *City of Seattle*, 87 Wn. App. at 722. We have previously held that an AGO "constitutes notice to the Legislature of the Department's interpretation of the law," and found acquiescence where the Legislature had not subsequently acted to "overturn the Department's interpretation." *Bowles v. Department of Retirement Sys.*, 121 Wn.2d 52, 63-64, 847 P.2d 440 (1993). While we are not bound by an AGO, it is entitled to some deference in a case like this. *See Washington Fed'n of State Employees v. Office of Fin. Management*, 121 Wn.2d 152, 164, 849 P.2d 1201 (1993) ("Opinions of the Attorney General are entitled to considerable weight, but are not controlling upon this court. In particular, we give less deference to such opinions when they involve issues of statutory inter-

pretation.") (citations omitted). The Court of Appeals seems to have given it the appropriate weight when it wrote that the AGO *"reinforces* our view that the superior court correctly enjoined SCC from proceeding without a contractor license." *City of Seattle,* 87 Wn. App. at 722 (emphasis added). Similarly, "[w]here an agency is charged with the administration and enforcement of a statute, the agency's interpretation of an *ambiguous* statute is accorded great weight in determining legislative intent." *Waste Management of Seattle, Inc. v. Utilities & Transp. Comm'n,* 123 Wn.2d 621, 628, 869 P.2d 1034 (1994) (citation omitted). In other words, the Department should be afforded the benefit of the doubt here.[3]

The Court of Appeals noted that the term "other entity" is used throughout RCW 19.28. *City of Seattle,* 87 Wn. App. at 720. For example, RCW 19.28.210 describes the Department's duty "to inspect all wiring, appliances, devices, and equipment to which this chapter applies." RCW 19.28.210(1). RCW 19.28.210(3) reads as follows:

> Whenever the installation of any wiring, device, appliance, or equipment is not in accordance with this chapter, or is in such a condition as to be dangerous to life or property, the person, firm, partnership, corporation, *or other entity* owning, using, or operating it shall be notified by the department and shall . . . make such repairs and changes as are required to remove the danger to life or property and to make it conform to this chapter.

(Emphasis added.) Would the City seriously argue that the Department must countenance any "danger to life and property" that the City's electrical work poses because the City is not included within the scope of this provision too? For consistency's sake, it must so argue if its assertion vis-

---

[3]The Department has made no res judicata argument with regard to the ruling of the Electrical Board, although it did suggest during oral argument that we should accord the same weight to the Board's ruling as to the Department's interpretation of the statute at issue. However, the Department cited no authority in support of this position, and we "need not decide a contention not supported by citation to authority." *In re Electric Lightwave, Inc.,* 123 Wn.2d 530, 545, 869 P.2d 1045 (1994) (citing *State v. Lord,* 117 Wn.2d 829, 822 P.2d 177 (1991)).

à-vis RCW 19.28.120(1) is to be accepted. Instead, however, the City's position appears to be that it need be bound only by those sections of RCW 19.28 which it finds to be convenient. As the Court of Appeals noted, "[g]iven the great importance of allowing the Department to require the correction of dangerous conditions caused by defective installation, the use of 'other entity' in these statutes *must* be broad enough to encompass municipalities engaged in non-utility electrical contracting work." *City of Seattle*, 87 Wn. App. at 720-21 (emphasis added).

Finally, the City's best argument is one that was unaddressed by the Court of Appeals, namely that the use of the words "business" and "electrical industry" in RCW 19.28.120(1) excludes "governmental bodies that do not conduct business as a means of livelihood or for profit." Pet. for Review at 11. This is a closer question, but not close enough to vindicate the City's position. We turn again to the language at issue:

> It is unlawful for any person, firm, partnership, corporation, or other entity to engage in, conduct, or carry on the *business* of installing or maintaining wires or equipment to convey electric current, or installing or maintaining equipment to be operated by electric current *as it pertains to the electrical industry*, without having an . . . electrical contractor license, issued by the department in accordance with this chapter.

RCW 19.28.120(1) (emphasis added). The City cites a Court of Appeals case in which the court turned to a dictionary to define the term "business": "BLACK'S LAW DICTIONARY defines 'business' as '[e]mployment, occupation, profession, or commercial activity engaged in for gain or livelihood.' " *Rogers v. Irving*, 85 Wn. App. 455, 463, 933 P.2d 1060 (1997) (citing BLACK'S LAW DICTIONARY at 198). *Rogers* was a much more obvious case, though. There the real question was the meaning of the term "person" within this statutory context: "The term 'employer' means any *person*, firm, corporation, partnership, business trust, legal representative, or other business entity which engages in any busi-

ness, industry, profession, or activity in this state . . . ."
*Rogers*, 85 Wn. App. at 459 (quoting RCW 49.17.020(3))
(emphasis added). As the court noted, within that particu-
lar context one had to read "person" in a manner consis-
tent with "all the business-related words the Legislature
included in the same sentence." *Rogers*, 85 Wn. App. at
462. Accordingly, a homeowner who hired independent
contractors to build his home was found, quite logically, to
not be a "person" engaged in "an activity for gain or liveli-
hood." *Rogers*, 85 Wn. App. at 463.

Here the context within which the term "business" is
used does not make defining it so easy, although we can
turn to the same source that the *Rogers* court relied upon:
"That which habitually busies or occupies or engages the
time, attention, labor, and effort of persons as a principal
serious concern or interest *or* for livelihood or profit."
BLACK'S LAW DICTIONARY at 198 (emphasis added). In defining
"business," we have previously quoted from a Supreme
Court opinion: " 'Business' is a very comprehensive term,
and embraces everything about which a person can be
employed." *Bankers Holding Corp. v. Maybury*, 161 Wash.
681, 689, 297 Pac. 740, 75 A.L.R. 1237 (1931) (quoting *Flint
v. Stone Tracy Co.*, 220 U.S. 107, 171, 31 S. Ct. 342, 55 L.
Ed. 389 (1911)). A final dictionary definition of "business"
seems appropriate, too: "[A]n activity engaged in as
normal, logical, or inevitable and usu. extending over a
considerable period of time : ROLE, FUNCTION . . . ."
WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 302 (3d ed.
1986). All of these authorities establish that the term "busi-
ness" is not limited to private profit-making entities alone.
"Business" as "activity" would encompass the City's SCC
program, and this would be more in keeping with the
legislative intent evinced in RCW 19.28.010(1). Moreover,
given the fact that the SCC program involved work
conducted on private property on a fee-for-service (albeit
nonprofit) basis it is even more apparent that in this case
the City was conducting "business." Furthermore, the ad-
dition of the term "electrical industry," without more, does
not add much to this exercise in interpretation. As used it

merely appears to modify the term "electrical current." Again, "[i]f the statute is ambiguous, the courts must construe the statute so as to effectuate the legislative intent. In so doing, we avoid a literal meaning if it would result in unlikely, absurd or strained consequences. The purpose of an enactment should prevail over express but inept wording." *Whatcom County*, 128 Wn.2d at 546 (citations omitted). We decline any invitation to thwart, in our construction of the ambiguous terms "business" and "electrical industry," the Legislature's quite reasonable intent to regulate those engaged in electrical work.

Because it is clear to us that the City of Seattle is an "entity" subject to the licensing requirements of RCW 19.28.120 when it engages in non-utility electrical work, we affirm the Court of Appeals.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, TALMADGE, and SANDERS, JJ., concur.