Honorable JanÃa Holmquist State Senator, 13th District P.O. Box 40413 Olympia, WA 98504-0413
Dear Senator Holmquist:
By letter previously acknowledged, you have requested our opinion on the following question:
Do the activities of certain Internet companies as described below, constitute manufacturing for the purposes of the rural county sales and use tax deferral program created in RCW 82.60?
 BRIEF ANSWER
Governing statutory language and rules of statutory construction discussed below compel us to conclude that the Internet company activities described do not constitute manufacturing within the meaning of RCW 82.60.020(6).
 BACKGROUND
Your question concerns whether the activities of certain Internet companies located in Grant County meet a statutory definition of "manufacturing" so as to qualify for the sales and use tax deferral program administered by the Washington State Department of Revenue (DOR) under RCW 82.60. We understand that these companies sought a sales and use tax deferral certificate under the program, but DOR determined that the companies are not eligible for deferrals, because their activities do not fall within the definition of "manufacturing" in the statute. Although your request letter concerns specific companies and a dispute involving their requests to the Department of Revenue (DOR) for sales and use tax deferral certificates, this opinion is not intended to resolve the companies' deferral requests. Rather, this opinion examines application of the relevant statutes based on general information that you have [original page 2] provided in your opinion request, and is intended to assist you in assessing whether additional legislation on this subject may be appropriate.
As described in your letter, these companies make available to customers large amounts of data stored in the companies' servers and the companies' computer applications to manipulate and format the data in response to the customers' search requests. In an example you have provided, a customer performs a search, causing the servers to process the query and combine data from different sources to produce a unique response or data format for the customer. As your inquiry expresses it, the process of responding to the customer requires combining data in "distinctive ways to create new, dynamic web pages" transmitted over the Internet.
 ANALYSIS
We begin with a review of the relevant statutory definitions of terms found in RCW 82.60 and upon which eligibility for the deferral depends. The Legislature established the sales and use tax deferral program under RCW 82.60 in 1985, as part of its efforts to address unemployment and poverty in distressed areas of the state. RCW 82.60.010. The purpose of the program is to promote economic stimulation and employment opportunities by deferring taxes for specified investment projects in rural areas. Id.
DOR is directed by statute to issue a tax deferral certificate for state and local sales and use taxes on each "eligible investment project" located in an "eligible area." RCW 82.60.040. With certain exceptions not at issue here, "eligible investment project" means an "investment project" in a rural county as defined in RCW 82.14.370(5). RCW 82.60.020(4). There is no dispute that Grant County is a rural county for purposes of the tax deferral program. See RCW 82.14.370.
For purposes of the deferral program, "investment project" means "an investment in qualified buildings or qualified machinery and equipment, including labor and services rendered in the planning, installation, and construction of the project." RCW 82.60.020(5). The definition of qualified buildings requires a building to be "an essential or an integral part of a factory, mill, plant, or laboratory used formanufacturing or research and development." RCW 82.60.020(8) (emphasis added).[1] The definition of qualified machinery and equipment requires that such [original page 3] investments be an integral and necessary part of a manufacturing or research and development operation. RCW 82.60.020(10) (emphasis added).[2] For purposes of this analysis, you ask us to assume that the Internet companies seeking a tax deferral will invest in buildings or machinery and equipment that are integral to their business, and we do so.
Because the sales and use tax deferral at issue is available with respect to qualified buildings and equipment used for manufacturing, the applicable definition of manufacturing is critical to your inquiry.[3] RCW 82.60.020(6), which defines manufacturing for purposes of the tax deferral in question, has two components. First, it incorporates by reference the definition of manufacturing in the business and occupation tax statute, RCW 82.04.120. Second, it describes certain additional activities as manufacturing. RCW 82.60.020(6) provides in full:
 "`Manufacturing' means the same as defined in RCW 82.04.120. `Manufacturing' also includes computer programming, the production of computer software, and other computer-related services, the activities performed by research and development laboratories and commercial testing laboratories, and the conditioning of vegetable seeds."
 RCW 82.04.120 (which RCW 82.60.020(6) incorporates by reference) defines "to manufacture" as follows:
 "To manufacture" embraces all activities of a commercial or industrial nature wherein labor or skill is applied, by hand or machinery, to materials so that as a result thereof a new, different or useful substance or article of tangible personal property is produced for sale or commercial or industrial use, and shall include: (1) The production or fabrication of special made or custom made articles; (2) the production or fabrication of dental appliances, devices, restorations, substitutes, or other dental laboratory products by a dental laboratory or dental technician; (3) cutting, delimbing, and measuring of felled, cut, or taken trees; and (4) crushing and/or blending of rock, sand, stone, gravel, or ore.
 "To manufacture" shall not include: Conditioning of seed for use in planting; cubing hay or alfalfa; activities which consist of cutting, grading, or ice glazing seafood which has been cooked, frozen, or canned outside this state; the growing, harvesting, or producing of agricultural products; packing of agricultural products, including sorting, washing, rinsing, grading, waxing, treating with fungicide, packaging, chilling, or placing in controlled atmospheric storage; or the production of computer software if the computer software is delivered from the [original page 4] seller to the purchaser by means other than tangible storage media, including the delivery by use of a tangible storage media where the tangible storage media is not physically transferred to the purchaser.
With these statutes in mind, we consider your question which essentially asks whether the activities that you have described constitute manufacturing as defined by RCW 82.60.020(6). Your inquiry suggests that the described activities produce a new different or more useful product so as to be manufacturing within the meaning of RCW 82.04.120. Alternatively, your inquiry suggests that these activities constitute "other computer-related services" under RCW 82.60.020(6). We consider each of these suggestions below.
Certain rules that courts apply in determining the meaning of statutes and their application to particular facts are central to resolving your question. Accordingly, we discuss them at this point. "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Dep't ofEcology v. Campbell Gwinn, L.L.C., 146 Wn.2d 1, 9, 43 P.3d 4 (2002). The "plain meaning" of a statutory provision is to be discerned from the ordinary meaning of the language at issue, as well as from the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole. Wash. Pub. Ports Ass'n v. Dep't ofRevenue, 148 Wn.2d 637, 645, 62 P.3d 462 (2003); Campbell Gwinn,146 Wn.2d at 10-12. A statute is ambiguous when it is susceptible to more than one reasonable interpretation. Cerrillo v. Esparza, 158 Wn.2d 194,201, 142 P.3d 155 (2006). If a statutory tax exemption is ambiguous, it will be narrowly construed in favor of application of the tax.Evergreen-Washelli Mem'l Park Co. v. Dep't of Rev., 89 Wn.2d 660, 663,574 P.2d 735 (1978). The tax deferral statute at issue here is subject to this rule. In Overton v. Washington State Economic AssistanceAuthority, 96 Wn.2d 552, 556, 637 P.2d 652 (1981), the Court considered the scope of a sales and use tax deferral statute similar to the statute about which you inquire. It held that a "deferral of the tax subsequently payable without interest is in the nature of a partial exemption" and therefore applied this narrow construction rule to a statute that deferred sales tax on construction projects undertaken by manufacturers. The tax deferral about which you inquire is of the same nature; the taxes deferred are subsequently payable without interest. RCW 82.60.060(1)(3). See also Valley Fruit v. Dep't of Rev.,92 Wn. App. 413, 417, 963 P.2d 886 (1998), review denied, 137 Wn.2d 1017,978 P.2d 1098 (1999) (applying narrow construction rule to a tax deferral).
With these rules in mind, we first consider whether the activities described in your inquiry constitute manufacturing under RCW 82.04.120. Repeated here for ease of reference, this definition of manufacturing "embraces all activities of a commercial or industrial nature wherein labor or skill is applied, by hand or machinery, to materials so that as a result thereof a new, different or useful substance or article of tangible personal property is produced for sale or [original page5] commercial or industrial use." Under this statutory language, for an activity to be manufacturing, the activity must result in the production of a substance or article of tangible personal property for sale or commercial or industrial use. "Commercial or industrial use" in this context is defined by RCW 82.04.130. It provides:
 "Commercial or industrial use" means the following uses of products, including byproducts, by the extractor or manufacturer thereof:
 (1) Any use as a consumer; and
 (2) The manufacturing of articles, substances or commodities.
As we understand your inquiry, activities of the Internet companies — providing customers with access to data bases and search engines — do not produce tangible personal property for sale to the Internet companies' customers, or for the industrial or commercial use of the Internet companies. Rather, we understand the activities in question to be making the Internet companies' data and search engines available to customers who access them remotely over the Internet. These activities do not produce a product which is sold to the companies' customers or used by the Internet companies as consumers or in manufacturing articles, substances or commodities. For these reasons, these activities would not be manufacturing under the language of RCW 82.04.120.
In addition, considering RCW 82.04.120 as a whole, we note that under its terms, even where a person creates and sells electronic data in the form of computer software, that activity is not manufacturing under RCW 82.04.120 unless the electronic data is delivered by the seller to the purchaser in a tangible storage medium. In this respect, RCW 82.04.120
provides that manufacturing does not include "the production of computer software if the computer software is delivered from the seller to the purchaser by means other than tangible storage media, including the delivery by use of a tangible storage media where the tangible storage media is not physically transferred to the purchaser." As we understand it, with respect to data accessed and manipulated by the Internet companies' customers under the circumstances about which you inquire, there neither is a sale nor transfer of electronic data through a tangible storage medium.
For these reasons, we believe that the language of RCW 82.04.120
itself compels the conclusion that the activities in question do not constitute manufacturing under that statute. Finally, we note that if RCW 82.04.120 were considered ambiguous in this regard, its definition of manufacturing would be narrowly construed in favor of application of the tax, because in this context, RCW 82.04.120 functions as part of statutes that create a tax deferral. Overton.
We next consider whether the activities described are manufacturing within the expanded definition found in RCW 82.60.020(6) itself. Specifically, we consider whether the activities described in your inquiry constitute "other computer related services" under RCW 82.60.020(6). Repeated here for ease of reference, that language provides "[m]anufacturing" also includes computer programming, the production of computer software, and other computer-related[original page 6] services, the activities performed by research and development laboratories and commercial testing laboratories, and the conditioning of vegetable seeds."[4]
The statute does not define "other computer-related services" and we have found no ordinary definition of this term. To determine its meaning, we look to the language of the statute as a whole, just as a court would. Campbell Gwinn, 146 Wn.2d at 4; Simpson Inv. Co. v. Dep'tof Revenue, 141 Wn.2d 139, 3 P.3d 741 (2000). The term "other computer-related services" is not used in isolation in this statute. RCW 82.30.020(6) defines manufacturing to include "computer programming, the production of computer software, and other computer-related services[.]" Where, as here, general terms ("other computer related services") are used in a statutory sequence with specific terms ("computer programming" and "production of computer software"), the general term is restricted to items similar to the specific terms. In re Estate of Jones,152 Wn.2d 1, 93 P.3d 147 (2004); City of Seattle v. State Dep't of Labor andIndus., 136 Wn.2d 693, 965 P.2d 619 (1998). Each of the specific terms, computer programming" and "the production of computer software", describes a service that facilitates the operation or use of a computer. Certain "other computer-related services", such as repairing or rebuilding computers, might also be "manufacturing" in this sense, i.e., in that the activity facilitates the operation or use of a computer. However, providing access to data bases and applications that manipulate and format existing data is not a service of that sort.[5]
Given the examples listed, we conclude that under the rule discussed above, "other computer-related services" refers to services that are similar in nature to "computer programming" or "the production of computer software", and that the activities you describe are not of a this kind. Further, in context, it seems evident that the Legislature did not use the term "other computer-related services" to mean "any" or "all' computer-related services. If that were the meaning of "other computer-related services", there would be no need for the statute to separately identify "computer programming" and "the production of computer software" as manufacturing. The Legislature simply could have stated that "computer-related services" are included as manufacturing. A statute should not be read to render any of its words meaningless or surplusage. Stone v. Sheriff's Department, 110 Wn.2d 806, 756 P.2d 736
(1988).[6] Finally, we note that because the meaning of "other computer-related services" in RCW 82.60.020(6) is ambiguous, this conclusion further is consistent with the rule that statutory exemptions from taxing laws, including tax deferrals of the nature at issue here are narrowly construed. Overton.
[original page 7] For all of these reasons, we are compelled to conclude that the activities described in your letter do not constitute manufacturing under RCW 82.60. We must therefore answer your question in the negative.
We trust that the foregoing will be useful to you.
ROB MCKENNA Attorney General.
SUZANNE J. SHAW Assistant Attorney General
:rs
[1] "Qualified buildings" is defined in full as the construction of new structures, and expansion or renovation of existing structures for the purpose of increasing floor space or production capacity used for manufacturing and research and development activities, including plant offices and warehouses or other facilities for the storage of raw material or finished goods if such facilities are an essential or an integral part of a factory, mill, plant, or laboratory used for manufacturing or research and development. If a building is used partly for manufacturing or research and development and partly for other purposes, the applicable tax deferral shall be determined by apportionment of the costs of construction under rules adopted by the department.
RCW 82.60.020(8) (emphasis added).
[2] "Qualified machinery and equipment" means all new industrial and research fixtures, equipment, and support facilities that are an integral and necessary part of a manufacturing or research and development operation. "Qualified machinery and equipment" includes: Computers; software; data processing equipment; laboratory equipment; manufacturing components such as belts, pulleys, shafts, and moving parts; molds, tools, and dies; operating structures; and all equipment used to control or operate the machinery. Id.
[3] The deferral also is available with respect to qualified investments for research and development, but that basis for eligibility is not at issue here.
[4] As we understand it, the activities you inquire about are not "computer programming" or "the production of commercial software." The question is whether they are "other computer-related services" as that term is used in the statute.
[5] We also note that computer programming and the production of computer software both result in a new "product" which might not be tangible in the physical sense but is an electronic analogue of a tangible product. In this sense, RCW 82.60.020 definitely includes certain computer-related activities that would not meet the definition in RCW 82.04.120 as discussed above. By contrast, the activities you inquire about facilitate the use of existing software without creating any new product.
[6] It also seems unlikely that the Legislature intended to employ the term "manufacturing" to mean all "computer-related services". Had the legislature intended to provide a tax exemption for all service activities related to computers, it seems doubtful that it would have done so by defining such services as manufacturing.